**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
- WICHITA FALLS DIVISION -**

**CORNELIUS CAMPBELL BURGESS**,

        Plaintiff,

    v.

**FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.**,

        Defendants.

**CIVIL NO. 7:22-cv-00100-O**

The Honorable Reed O'Connor,
United States District Judge

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew J. Dober
Senior Counsel

  /s/ *Andrew A. Nicely*
Andrew A. Nicely (Va. No. 41750)
Daniel Kurtenbach
3501 Fairfax Drive, D-7028
Arlington, VA 22226-3500
Tel.: (703) 516-5729
Fax: (703) 562-2477
Email: anicely@fdic.gov

Bryce C. Quine (Tex. No. 24032976)
Arthur E. Anthony (Tex. No. 24001661)
600 North Pearl Street, Suite 700
Dallas, Texas 75201
Telephone: (972) 761-8520
Alternate Tel.: (972) 761-2237
Email: bquine@fdic.gov
Email: aranthony@fdic.gov

*Counsel for Defendants*

DATED:   October 24, 2022

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    A.   The FDIC ...................................................................................................... 3

    B.   FDIC Enforcement Actions and Judicial Review Thereof ................................... 3

    C.   The Burgess Enforcement Action ..................................................................... 5

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.    PLAINTIFF HAS NOT CLEARLY SHOWN A SUBSTANTIAL
        LIKELIHOOD OF SUCCESS ON THE MERITS. ........................................... 7

        A.   Section 1818(i)(1) Explicitly Divests This Court Of Jurisdiction. ......... 8

        B.   There Is No Final Agency Action Subject To Judicial Review
             Under The APA. ................................................................................. 17

    II.   PLAINTIFF HAS NOT CLEARLY SHOWN A SUBSTANTIAL THREAT
        OF IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY
        INJUNCTION. ...................................................................................... 20

    III.  PLAINTIFF HAS NOT CLEARLY SHOWN THAT THE BALANCING
        OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR THE ISSUANCE
        OF A PRELIMINARY INJUNCTION ................................................... 23

CONCLUSION ....................................................................................................................... 25

CERTIFICATE OF SERVICE .............................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ali v. Fed. Bureau of Prisons,*
    552 U.S. 214 (2008)..................................................................................................... 13

*American Airlines, Inc. v. Herman,*
    176 F.3d 283 (5th Cir. 1999)....................................................................................... 19

*Anderson v. Oakley,*
    No. 95-20408, 77 F.3d 475, 1995 WL 798510 (5th Cir. Dec. 20, 1995).................................. 8

*Bank of Louisiana v. FDIC,*
    919 F.3d 916 (5th Cir. 2019)...............................................................................*passim*

*Barbosa v. Barr,*
    502 F. Supp. 3d 1115 (N.D. Tex. 2020).......................................................................... 8

*Bebo v. SEC,*
    799 F.3d 765 (7th Cir. 2015)....................................................................................... 16

*BedRoc Ltd. v. United States,*
    541 U.S. 176 (2004)..................................................................................................... 10

*Benisek v. Lamone,*
    138 S. Ct. 1942 (2018)................................................................................... 21, 22, 23

*Bennett v. Spear,*
    520 U.S. 154 (1997)..................................................................................................... 19

*Bluefield Water Ass'n v. City of Starkville,*
    577 F.3d 250 (5th Cir. 2009)..................................................................................... 6, 7

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.,*
    502 U.S. 32 (1991)...........................................................................................*passim*

*Bd. of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.,*
    29 F.3d 993 (5th Cir. 1994)................................................................................. 10, 12

*Bowsher v. Synar,*
    478 U.S. 714 (1986)..................................................................................................... 22

*Burgess v. FDIC,*
    871 F.3d 297 (5th Cir. 2017)....................................................................................... 23

*Butts v. Aultman,*
    953 F.3d 353 (5th Cir. 2020)......................................................................................... 8

*Carver v. Liberty Mut. Ins. Co.*,
   277 F.2d 105 (5th Cir. 1960) ........................................................................20

*Cochran v. Sec. & Exch. Comm'n*,
   969 F.3d 507 (5th Cir. 2020) .........................................................................11

*Cochran v. U.S. Sec. & Exch. Comm'n*,
   20 F.4th 194 (5th Cir. 2021) ................................................................*passim*

*Connecticut Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) .......................................................................................12

*Crane v. Beers*,
   No. 3:12-cv-3247-O, 2013 WL 12123944 (N.D. Tex. Dec. 9, 2013) ...............13

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015) .........................................................................13

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ...........................................................................................15

*Exxon Chemicals America v. Chao*,
   298 F.3d 464 (5th Cir. 2002) .........................................................................19

*Fahey v. Mallonee*,
   332 U.S. 245 (1947) .......................................................................................24

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982) .......................................................................................24

*Franciscan All., Inc. v. Burwell*,
   227 F. Supp. 3d 660 (N.D. Tex. 2016) ..........................................7, 18, 19, 20

*Gonannies, Inc. v. Goupair.Com, Inc.*,
   464 F. Supp. 2d 603 (N.D. Tex. 2006) ..........................................................21

*Groos Nat'l Bank v. Comptroller of Currency*,
   573 F.2d 889 (5th Cir. 1978) .........................................................................10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) .....................................................................................14

*Honig v. Doe*,
   484 U.S. 305 (1988) .......................................................................................14

*Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*,
   482 U.S. 270 (1987) .......................................................................................17

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*,
  328 F.3d 192 (5th Cir. 2003)................................................................................7, 8

*Landmark Land Co. v. Office of Thrift Supervision*,
  948 F.2d 910 (5th Cir. 1991).................................................................................10

*Langley v. FDIC*,
  484 U.S. 86 (1987).................................................................................................14

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018)...........................................................................................21

*Medlin v. Palmer*,
  874 F.2d 1085 (5th Cir. 1989)..................................................................................7

*Michael v. FDIC*,
  687 F.3d 337 (7th Cir. 2012)....................................................................................5

*Mohamad v. Palestinian Auth.*,
  566 U.S. 449 (2012)...............................................................................................12

*Nianga v. Wolfe*,
  435 F. Supp. 3d 739 (N.D. Tex. 2020).....................................................................8

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004).................................................................................................19

*Ratzlaf v. United States*,
  510 U.S. 135 (1994)...............................................................................................12

*Rhoades v. Casey*,
  196 F.3d 592 (5th Cir. 1999)..........................................................................9-10, 12

*Ross v. Blake*,
  578 U.S. 632 (2016)...............................................................................................14

*Scott v. FDIC*,
  684 F. App'x 391 (5th Cir. 2017) ..........................................................................18

*Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*,
  749 F. Supp. 758 (N.D. Tex. 1990)........................................................................25

*Sierra Club v. Peterson*,
  228 F.3d 559 (5th Cir. 2000)..................................................................................19

*Stevens v. St. Tammany Parish Gov't*,
  17 F.4th 563 (5th Cir. 2021) ..........................................................................6, 8, 20

*Texas Med. Providers Performing Abortion Servs. v. Lakey*,
667 F.3d 570 (5th Cir. 2012)..................................................................................6, 7

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)..................................................................................15, 16, 18

*United States v. Philadelphia Nat'l Bank*,
374 U.S. 321 (1963)..........................................................................................24

*U.S. Sec. & Exch. Comm'n v. Cochran*,
142 S. Ct. 2707 (2022)......................................................................................10

*White v. Johnson*,
429 F.3d 572, 574 (5th Cir. 2005)......................................................................21

**Statutes**

5 U.S.C. § 704.....................................................................................17, 18, 19
5 U.S.C. § 705.....................................................................................................5
5 U.S.C. § 706..............................................................................................*passim*
12 U.S.C. § 1811................................................................................................3
12 U.S.C. § 1817................................................................................................3
12 U.S.C. § 1818.........................................................................................*passim*
12 U.S.C. § 1819................................................................................................3
12 U.S.C. § 1820................................................................................................3
12 U.S.C. § 1821..............................................................................................24
12 U.S.C. § 1831o..........................................................................................9, 14
12 U.S.C. § 1831p-1........................................................................................9, 14
Administrative Procedure Act ("APA"),
5 U.S.C. §§ 701-706.......................................................................................4

Financial Institutions Supervisory Act of 1966 ("FISA"),
Pub. L. No. 89-695, 80 Stat. 1028...................................................................8

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
Pub. L. No. 101-73, 103 Stat. 183...................................................................3

**Regulations**

12 C.F.R. Part 308............................................................................................4
12 C.F.R. § 215................................................................................................3

**Other Authorities**

1 K. Davis, Administrative Law Treatise § 4.04, at 247 (1958) ................................................................ 24

11 Charles Alan Wright & Arthur R. Miller,
    FEDERAL PRACTICE & PROCEDURE § 2946 (3d ed. 1973) ..................................................... 21

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    FEDERAL PRACTICE & PROCEDURE § 2948.1 (2d ed. 1995) ................................................. 21

FDIC 2021 Annual Report at 183,
    https://www.fdic.gov/about/financial-reports/reports/2021annualreport/2021-arfinal.pdf .................... 24

Recommended Decision, In the Matter of Cornelius Campbell Burgess,
    Docket Nos. FDIC-14-0307e; FDIC-14-0308k (Sept. 16, 2022),
    https://www.ofia.gov/decisions/2022-09-16-fdic-14-0307e.pdf. ........................................................... 6

S. Rep. No. 89-1482 (1966) ................................................................................................................ 12, 13

Defendants, the Federal Deposit Insurance Corporation ("FDIC"), Martin J. Gruenberg, Michael J. Hsu, Rohit Chopra, and Jennifer Whang, respectfully submit this opposition to plaintiff Cornelius Campbell Burgess' motion for a preliminary injunction. This Court lacks subject matter jurisdiction over the underlying controversy and Burgess has not carried his burden of establishing entitlement to the extraordinary remedy of a preliminary injunction. Accordingly, his motion should be denied.

## INTRODUCTION

The Complaint unabashedly explains that "[t]he purpose of this lawsuit is to prevent the FDIC, its directors, and an administrative law judge from continuing a[] [purportedly] unconstitutional enforcement action against Burgess." Complaint ("Cmplt.") ¶ 1, Dkt. 1. Stated another way, this is a collateral attack on an ongoing FDIC enforcement action—a gambit that Congress specifically foreclosed when it divested district courts of jurisdiction to "affect by injunction or otherwise the issuance or enforcement of any [FDIC enforcement] notice or order . . ., or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1818(i)(1). Burgess already has presented his defenses, including his constitutional arguments, to the FDIC Board of Directors ("Board") and, if he is dissatisfied with the Board's decision, he can appeal it to the Fifth Circuit or to the D.C. Circuit. But he cannot litigate those issues in this Court, nor can he obtain a preliminary injunction suspending the FDIC enforcement action.

Under the familiar standard, a party seeking a preliminary injunction must demonstrate (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his substantial injury outweighs the threatened harm to the party that would be enjoined, and that (4) granting the preliminary injunction will not disserve the public interest. A movant's failure to carry his burden on even one

of the factors is grounds to refuse the extraordinary remedy of a preliminary injunction. Here, Burgess has not shown that *any* of the factors support the issuance of an injunction prohibiting the FDIC from carrying out its statutory duty to investigate potential violations of the federal banking laws and regulations.

Burgess cannot demonstrate a substantial likelihood of success on the merits because Section 1818(i)(1) explicitly divests this Court of jurisdiction to grant the injunctive and declaratory relief sought in the Complaint. Congress established a tripartite system of review in which final enforcement decisions of the FDIC Board may be appealed directly to a court of appeals. To obtain review by a court of appeals, Burgess must await a final decision from the FDIC Board. Thus, under the plain meaning of Section 1818(i), ***no court*** has jurisdiction to enjoin an ongoing FDIC enforcement proceeding before it has concluded. When, as here, the Court lacks subject matter jurisdiction over the controversy, the plaintiff's likelihood of success is not substantial; it is zero.

The Fifth Circuit has held that district courts can dispense with the remaining preliminary injunction factors if the movant cannot carry the threshold burden of establishing a substantial likelihood of success on the merits. Should the Court nevertheless decide to consider the other factors, Burgess' submission provides additional, independent grounds for denying the requested injunction. For example, Burgess has not demonstrated that he is substantially likely to suffer irreparable harm without a preliminary injunction. The Board has not issued a decision, much less an adverse decision. Moreover, if the Board were to issue an adverse decision, and if that decision posed a risk of irreparable injury to Burgess, he could petition the Board to stay its decision and, if the Board refused, he could petition the Fifth Circuit or the D.C. Circuit for a stay. Turning to the third and fourth factors, the irreparable injuries that Burgess claims to be facing—damage to

his reputation and a disruption to Herring Bank should the Board prohibit him from working there—do not substantially outweigh the irreparable harm that the FDIC will suffer if it is barred from enforcing the federal banking laws and regulations.

## BACKGROUND

### A.      The FDIC

Congress established the FDIC in 1933, in response to an epidemic of bank closures to restore confidence in the nation's banking system by creating a system of deposit insurance.  *See* 12 U.S.C. §§ 1811, 1819.  Subsequent legislation expanded the FDIC's role in regulating and stabilizing banks.  *See, e.g.*, Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183.  The FDIC serves, among other things, as a regulator for certain state-chartered banks, including Herring Bank.  *See* 12 U.S.C. §§ 1817(a), 1819, 1820(b). In that capacity, the FDIC assesses the financial condition and operations of its regulated banks, conducting examinations and preparing examination reports.  *See* 12 U.S.C. §§ 1817, 1820(b), (d). As part of the examination process, the FDIC monitors banks' compliance with Regulation O, which places restrictions on extensions of credit to bank insiders and their affiliates.  *See* 12 C.F.R. § 215.

### B.      FDIC Enforcement Actions and Judicial Review Thereof

The FDIC, pursuant to Section 8 of the Federal Deposit Insurance Act ("FDI Act"), can bring enforcement actions – commonly referred to as Section 8 proceedings – against institutions and affiliated parties that engage in unsafe and unsound practices or that violate banking laws or regulations.  *See, e.g.*, 12 U.S.C. § 1818(b) (cease-and-desist proceedings); § 1818(c) (temporary cease-and-desist orders); § 1818(e) (removal and prohibition authority); and § 1818(i) (civil money penalties).  If it becomes necessary to initiate a Section 8 proceeding, the FDIC issues a Notice of

Charges setting out the facts that constitute the alleged violation or the unsafe or unsound practice. *See id*. § 1818(b)(1).  The case is then assigned to an Administrative Law Judge ("ALJ") who conducts the proceedings pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the FDIC's corresponding Rules of Practice and Procedure, 12 C.F.R. Part 308.  Under the FDIC's Rules, the ALJ has all powers necessary to conduct a proceeding in accordance with the provisions of the APA.  This includes handling scheduling, issuing subpoenas, overseeing discovery, ruling on certain procedural matters, and receiving and ruling on the admissibility of documentary and testimonial evidence.

Within 45 days after the expiration of time allowed for the filing of post-hearing submissions, the ALJ must issue a recommended decision and file with the FDIC's Executive Secretary the complete administrative record of the proceeding including recommended findings of fact, recommended conclusions of law, and proposed order.  *See* FDIC Rule 308.38; 12 C.F.R. § 308.38.  Under FDIC Rule 308.39, the parties may file exceptions to the ALJ's recommended decision within 30 days after the decision is issued.  12 C.F.R. § 308.39.  After the deadline passes for filing exceptions and the record is complete, the case is transmitted to the Board for final decision.  The Board then has 90 days to issue a final agency decision.  *See* FDIC Rule 308.40; 12 C.F.R. § 308.40.

Once the Board issues its final decision, the respondent may, within 30 days, appeal the Board's final decision to either the U.S. Court of Appeals for the District of Columbia or to the federal appellate court where the bank's home office is located.  *See* 12 U.S.C. § 1818(h)(2).  The FDIC Board may elect to stay any order it issues pending judicial review.  *See* 12 C.F.R. § 308.41. The court of appeals reviews the Board's final decision pursuant to the APA.  *See* 12 U.S.C. § 1818(h)(2) (mandating that review of FDIC Board decisions on enforcement actions "shall be had

as provided in chapter 7 of Title 5 [of the APA]"); *accord Michael v. FDIC*, 687 F.3d 337, 348 (7th Cir. 2012) (recognizing that "[t]he Administrative Procedure Act, 5 U.S.C. § 706, governs our review [of an FDIC Board decision]."). The APA confers on the "reviewing court" the power to set aside agency action "contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2)(B). The reviewing court may stay the effective date of agency action pending its review. *See* 5 U.S.C. § 705.

### C.    The Burgess Enforcement Action

"Burgess served as the Chief Executive Officer of Herring Bank from 2000-2012," Cmplt. ¶ 2, and he currently serves as Vice Chairman on the Bank's board of directors, *id.* ¶ 17. According to the Complaint, the FDIC "began an investigation into Burgess' expense practices after receiving a false tip that he was using bank funds to renovate his house." *Id.* ¶ 57. In addition, during Burgess' tenure as CEO, the "bank fell victim" to a Ponzi scheme. *Id.* ¶ 4. The FDIC believed that Burgess was to blame for the resulting losses. *Id.* In 2016, an ALJ conducted a seven-day hearing in the matter. *Id.* ¶ 65. In January 2017, the ALJ issued a Recommended Decision adverse to Burgess and, in August 2017, the FDIC Board adopted it. *Id.* ¶¶ 66, 67. Several weeks later, Burgess appealed the Board's decision to the Fifth Circuit. *Id.* ¶ 68. In August 2018, the Fifth Circuit remanded the case to the FDIC Board for further proceedings in light of an intervening Supreme Court decision. *Id.* ¶ 72.

In November 2019, the FDIC reassigned the Enforcement matter to a different ALJ. *Id.* ¶ 75. In January 2022, after several postponements due to the pandemic, the ALJ conducted a three-day supplemental hearing featuring eleven witnesses and 55 exhibits. *Id.* ¶ 76. On September 16, 2022, the ALJ issued a 125-page decision recommending that Burgess be removed from his positions at Herring Bank and its holding company, that he be prohibited from working at other

banks, and that he be required to pay a civil money penalty of $200,000.  *Id.* ¶ 5.[1]  The Recommended Decision found that Burgess breached his fiduciary duties and engaged in unsafe and unsound practices relating to his use of Bank-owned credit and debit cards to charge personal expenses and the depositing of stock dividend payments into his personal accounts.  The Recommended Decision found that Burgess did not violate Regulation O.

On October 17, 2022, Burgess filed his exceptions to the Recommended Decision.  In his exceptions, Burgess raises all of the same constitutional claims that he seeks to litigate in this lawsuit; specifically, that the FDIC is unconstitutionally structured, that the ALJ is unconstitutionally shielded from removal, and that Burgess unconstitutionally was denied a jury trial in the enforcement proceeding.  In the fullness of time, the case will be transmitted to the Board.  Cmplt. ¶ 78.  The Board must issue its final decision within 90 days after the case is submitted.  *Id.*

## LEGAL STANDARD

"To be entitled to a preliminary injunction," the applicant must show "(1) a substantial likelihood that [he] will prevail on the merits, (2) a substantial threat that [he] will suffer irreparable injury if the injunction is not granted, (3) [his] substantial injury outweighs the threatened harm to the party whom [he] seek[s] to enjoin, and (4) granting the preliminary injunction will not disserve the public interest."  *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (quoting *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 252-53 (5th Cir. 2009)); *accord Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 576 (5th Cir. 2021) (affirming denial of preliminary injunction).

---

[1]     Recommended Decision, In the Matter of Cornelius Campbell Burgess, Docket Nos. FDIC-14-0307e; FDIC-14-0308k (Sept. 16, 2022), https://www.ofia.gov/decisions/2022-09-16-fdic-14-0307e.pdf.

The Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion on all four requirements.'"  *Texas Med. Providers*, 667 F.3d at 574 (quoting *Bluefield Water Ass'n*, 577 F.3d at 253); *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 677 (N.D. Tex. 2016) (O'Connor, J.) (recognizing that a preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion") (internal citations omitted).  Thus, "[t]he failure of a movant to establish one of the above four elements will result in the denial of a motion."  *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989); *accord Texas Med. Providers*, 667 F.3d at 572 (vacating preliminary injunction because the movants "failed to establish a substantial likelihood of success on any of the claims on which the injunction was granted").  Furthermore, even when a movant satisfies each of the four factors, the decision whether to grant or deny a preliminary injunction remains within the district court's discretion.  *Franciscan All.*, 227 F. Supp. 3d at 677.

## ARGUMENT

Burgess' motion for a preliminary injunction should be denied because he has not "clearly" carried his burden of persuasion on each of the required elements.  *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (internal citation omitted).  In fact, as defendants now show, plaintiff has not clearly carried his burden on any of the factors.

## I.    PLAINTIFF HAS NOT CLEARLY SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

To obtain a preliminary injunction, Burgess first must demonstrate that he is substantially likely to succeed on the merits.  *See Texas Med. Providers*, 667 F.3d at 574.  An "absence of likelihood of success on the merits is sufficient to make the . . . grant of a preliminary injunction improvident as a matter of law."  *Id.* (quoting *Lake Charles Diesel*, 328 F.3d at 203).  The Fifth

Circuit has explained that "[i]f the party requesting a preliminary injunction **cannot** show a substantial likelihood of success on the merits, the injunction should be denied and there is no need for the court to address the other requirements for a preliminary injunction." *Stevens*, 17 F.4th at 576 (quoting *Butts v. Aultman*, 953 F.3d 353, 361 (5th Cir. 2020)).

It is well settled that "[a] party seeking a TRO cannot establish a 'substantial likelihood of success on the merits' of his claim if the court concludes that it lacks jurisdiction to adjudicate the claim altogether." *Barbosa v. Barr*, 502 F. Supp. 3d 1115, 1119 (N.D. Tex. 2020) (quoting *Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020)).  For example, in *Anderson v. Oakley*, No. 95-20408, 77 F.3d 475, 1995 WL 798510 (5th Cir. Dec. 20, 1995), the Fifth Circuit concluded that the appellant "failed to demonstrate a substantial likelihood of success on the merits because the district court lacked federal jurisdiction."  1995 WL 798510, at *1 (citation omitted).  On that basis, the court of appeals did not hesitate to affirm the district court's refusal to issue a preliminary injunction.  *See id.*  This Court lacks subject matter jurisdiction over Burgess' claims for two reasons.

**A.      Section 1818(i)(1) Explicitly Divests This Court Of Jurisdiction.**

The Financial Institutions Supervisory Act of 1966 ("FISA"), Pub. L. No. 89-695, 80 Stat. 1028, established a "tripartite regime of judicial review" for FDIC enforcement actions.  *See Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 38 (1991) (discussing 12 U.S.C. § 1818).  Under this tripartite framework, federal courts have subject matter jurisdiction to review FDIC enforcement actions in only three circumstances.  First, the statute permits the FDIC and other federal banking agencies to petition district courts for "the enforcement of any effective and outstanding notice or order issued [to an insured bank]" pursuant to Section 8 proceedings.  12 U.S.C. § 1818(i)(1).  Second, district courts have jurisdiction to review challenges by bank directors and institution-affiliated parties to an agency's issuance of an emergency temporary cease

and desist order.  *See id.* § 1818(c)(2).  Third, the United States courts of appeals are vested with exclusive jurisdiction to review final agency orders issued in Section 8 proceedings.  *See id.* § 1818(h)(2).

Outside these specifically delineated circumstances, federal courts lack subject matter jurisdiction to review FDIC enforcement proceedings.  This is not merely implicit from the structure of Section 1818.  Rather, in language that the Supreme Court described as "plain" and "preclusive," Section 1818(i)(1) directs that:

> [E]xcept as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of ***any*** notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.[2]

*MCorp Fin.*, 502 U.S. at 39 (quoting 12 U.S.C. § 1818(i)(1)) (emphasis added).  In *MCorp Financial*, a bank holding company petitioned a district court for an injunction barring the Board of Governors of the Federal Reserve System from continuing to pursue an administrative enforcement action against the company.  *See* 502 U.S. at 36.  Citing Section 1818(i)(1), the Supreme Court explained that "the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the [Federal Reserve] Board's ongoing administrative proceedings."  502 U.S. at 44.

The Fifth Circuit, in line with *MCorp Financial*, repeatedly has recognized that "§ 1818(i) on its face is sufficient to deprive the district court of jurisdiction to review, modify or terminate banking agency disciplinary actions."  *Rhoades v. Casey*, 196 F.3d 592, 597 (5th Cir. 1999) (noting "the Supreme Court [has] held that the plain, preclusive language of § 1818(i) 'provides us with

---

[2]   Sections 1831o and 1831p-1 involve the powers of the appropriate federal banking agency to take prompt corrective action to resolve problems of insured depository institutions to protect the Deposit Insurance Fund and to proscribe operational and managerial standards that ensure the safety and soundness of insured depository institutions and have no relevance to this action.

clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin' administrative proceedings") (quoting *MCorp*, 502 U.S. at 44); *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 204 (5th Cir. 2021) (en banc), *cert. granted*, 142 S. Ct. 2707 (2022) (recognizing that the FDIC's statutory-review scheme includes "an explicit statutory bar on any court enjoining 'the issuance or enforcement of any . . . [FDIC] order.") (internal citation omitted); *Bd. of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir. 1994) (affirming the district court's determination that § 1818(i)(1) divested the court of jurisdiction to enjoin the FDIC and other banking agencies from continuing an enforcement proceeding); *Landmark Land Co. v. Office of Thrift Supervision*, 948 F.2d 910, 912 (5th Cir. 1991) ("On its face, and standing alone, this provision [*i.e.*, Section 1818(i)(1)] patently deprives the South Carolina court of any jurisdiction—as a transferee court or otherwise—over this matter."); *Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 894-95 (5th Cir. 1978) (applying Section 1818(i) and rejecting plaintiffs' attempt to circumvent the Office of the Comptroller of Currency enforcement proceedings by filing a lawsuit for declaratory and injunctive relief).

Burgess states in his motion that the Court should begin its analysis "with the question of whether the statute **explicitly** strips district-court jurisdiction."  Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. ("Pl. Mot.") at 24, Dkt. 15-1 (emphasis in original).   "If it does," he acknowledges, "that is the end of the inquiry . . . ."  *Id.*; *accord BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous").  That concession sounds the death knell for Burgess' lawsuit, and for his motion for a preliminary injunction, because Section 1818(i)(1) explicitly and unambiguously divests district courts of jurisdiction to "affect by injunction or otherwise the issuance or enforcement" of any enforcement notice or order.  12 U.S.C. § 1818(i)(1).

The Court need not defer to the FDIC's understanding of the statute.  Instead, the Court can look to *Cochran*, where the en banc Fifth Circuit repeatedly describes Section 1818(i)(1) as an ***explicit*** statutory bar "on ***any*** court enjoining 'the issuance or enforcement of ***any*** . . . [FDIC] order.'"  20 F.4th at 204 (first quoting *Bank of Louisiana v. FDIC*, 919 F.3d 916, 920 (5th Cir. 2019); then quoting § 1818(i)(1)) (emphasis added); *see id.* at 204 ("[W]e held [in *Bank of Louisiana*] that district court jurisdiction was ***explicitly*** divested."); *id.* (describing § 1818(i)(1) as an "explicit jurisdictional bar"); *id.* ("[W]e clarify that *Bank of Louisiana* was addressing the ***explicit*** statute at issue there—not all statutes that may be questioned—and it does not mandate the outcome here.") (emphasis added); *see also Bank of Louisiana*, 919 F.3d at 924 ("[A]s the FDIC correctly argues, the plain text of section 1818(i)(1) makes this case easier than the sister-circuit cases, which interpreted an SEC enforcement scheme lacking a similarly explicit jurisdictional bar.").

Faced with this adverse precedent, "Burgess of course agrees that Section 1818(i)(1) would explicitly strip jurisdiction if a plaintiff sought to enjoin an FDIC proceeding on the basis of some irregularity that was internal to the proceeding itself."  Pl. Mot. at 25.  In particular, he concedes that Section 1818(i)(1) divests district courts of jurisdiction to consider even constitutional claims that allege irregularities during an enforcement proceeding and which are not "wholly collateral, either procedurally or substantively."  *Id.* at 26-27 (quoting *Cochran v. Sec. & Exch. Comm'n*, 969 F.3d 507, 518 n.1 (5th Cir. 2020) (Haynes, J., dissenting in part)).  By contrast, according to Burgess, Section 1818(i)(1) neither explicitly nor implicitly withdraws jurisdiction over "**structural** constitutional claims that are **exogenous** to the Enforcement Proceeding."  *Id.* at 25.  The difficulty with Burgess' exogenous/endogenous taxonomy is that it disregards the plain meaning of the statute.

- 11 -

The Supreme Court has observed that, when interpreting a statute, "a court should always turn first to one, cardinal canon before all others[:] . . . [it] must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (citations omitted). The Supreme Court and the Fifth Circuit have described Section 1818(i)(1)'s jurisdictional bar as "clear," "direct[]," "plain," "robust," and "explicit." *MCorp Financial*, 502 U.S. at 44 (describing the statute as "clear[]" and "direct[]"); *Rhoades*, 196 F.3d at 597 (discussing the "plain, preclusive language of § 1818(i)"); *Cochran*, 20 F.4th at 204 (characterizing § 1818(i) as an "explicit jurisdictional bar"); *Bank of Louisiana*, 919 F.3d at 920 ("[W]e have emphasized that '[section] 1818(i) in particular'—the jurisdictional bar referenced above—'evinces a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention[.]'") (quoting *DLG Fin. Corp.*, 29 F.3d at 999); *Bank of Louisiana*, 919 F.3d at 924 (describing § 1818(i) as "robust").[3]

---

[3]    Burgess argues in a footnote that "nothing in the legislative history of FISA suggests any intent to strip district-court jurisdiction over structural constitutional claims." Pl. Mot. at 28 n.11. His reliance on legislative history is misplaced, however, because courts "do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *accord Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012) ("[R]eliance on legislative history is unnecessary in light of the statute's unambiguous language."). In any event, the Senate Report cited by plaintiff confirms that Congress intended to confer jurisdiction on district courts solely to consider stays of *temporary* cease-and-desist orders, not stays of an enforcement action in its entirety. S. Rep. No. 89-1482, at 11 (1966) (noting that an application for a stay of a temporary order "would, of course, be ancillary to the administrative proceedings, and the jurisdiction of the court would not extend to full consideration of the merits of the Board's charges but only to the court's determination of whether the *temporary cease-and-desist order* should be stayed or enforced *during the pendency of the administrative proceedings*.") (emphasis added), at 2 ("*Temporary orders* … could be stayed by a district court on application filed within 10 days. Permanent orders, issued after a hearing on the record, could be appealed to the local U.S. court of appeals or the District of Columbia Court of Appeals.") (emphasis added)). Review in the courts of appeals is the "exclusive" remedy. *Id.* at 15.

In *MCorp Financial*, the Supreme Court held that, in contrast to the National Labor Relations Act—which lacks an explicit withdrawal of jurisdiction—"in FISA Congress has spoken clearly and directly: '*[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section.*'" *MCorp Fin.*, 502 U.S. at 44 (alterations in original) (quoting § 1818(i)(1)); *accord Crane v. Beers*, No. 3:12-cv-3247-O, 2013 WL 12123944, at *3 n.3 (N.D. Tex. Dec. 9, 2013) (O'Connor, J.) (noting the distinction between the FISA and NLRA statutes), *aff'd sub nom. Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015).   The relief that Burgess seeks in his Complaint, "[a] stay or injunction barring continuation of the Enforcement Proceeding," Cmplt. p.40, is ***precisely*** the judicial intervention that Section 1818(i)(1) prohibits.   Burgess argues that the statute leaves a glimmer of daylight for his lawsuit because "with respect to structural constitutional claims . . ., Section 1818(i)(1) is simply silent."  Pl. Mot. at 27.   It is true that Section 1818(i)(1) does not specifically mention that the jurisdictional bar encompasses structural constitutional claims (exogenous or otherwise).   Nor does it specifically call out statutory claims, equitable claims, common law claims, or any other sort of claim or defense.   It does not need to.   The statutory phrase "***no*** court" could not be narrower, and the phrase "***any*** notice or order under this section" could not be broader.   As the Supreme Court explained while interpreting another federal statute, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (citation omitted).   Thus, taken together, "the expansive word 'any' and the absence of restrictive language [leave] 'no basis in the text for limiting' the phrase" in the way Burgess suggests.  *Id.*

In practical terms, Burgess is inviting the Court to engraft an exception onto Section 1818(i)(1) that Congress did not see fit to include.   As amended, the statute would read:

> [E]xcept as otherwise provided in this section or under section 1831o or
> 1831p-1 of this title no court shall have jurisdiction to affect by injunction
> or otherwise the issuance or enforcement of any notice or order under any
> such section, or to review, modify, suspend, terminate, or set aside any
> such notice or order, **except that district courts shall have jurisdiction
> over cases raising exogenous constitutional claims**.

Rather than altering the statutory text in this way, the Court should apply it according to its plain meaning. As the Supreme Court has emphasized, courts are "not at liberty to engraft onto [a] statute an exception Congress chose not to create." *Honig v. Doe*, 484 U.S. 305, 325 (1988); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("The short answer is that the Act contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text.") (citation omitted); *Ross v. Blake*, 578 U.S. 632, 648 (2016) ("Courts may not engraft an unwritten 'special circumstances' exception onto the [statute's] exhaustion requirement."); *Langley v. FDIC*, 484 U.S. 86, 94 (1987) (concluding that "[p]etitioners are really urging us to engraft an equitable exception upon the plain terms of the statute," and declining to do so).

Congress enacted Section 1818(i) in 1966 and, since then, the Supreme Court, the Fifth Circuit, and many other federal courts have had occasion to apply it. If the statute somehow could be read to permit district court jurisdiction over enforcement proceedings that implicate exogenous constitutional claims, surely Burgess would have been able to cite at least one case adopting his interpretation. Furthermore, if Burgess' approach were correct, *Bank of Louisiana* would have come out the other way. The plaintiff in that case, like Burgess, argued that the ALJ presiding over an FDIC enforcement hearing had been unconstitutionally appointed. *Compare Bank of Louisiana*, 919 F.3d at 921, with Cmplt. ¶ 114. While acknowledging that federal courts generally have jurisdiction over cases arising under the Constitution, the Fifth Circuit observed that "Congress may 'channel[ ] judicial review of a constitutional claim' through 'a statutory scheme

of administrative review followed by judicial review in a federal appellate court[,] [thereby] preclud[ing] district court jurisdiction.'"  *Bank of Louisiana*, 919 F.3d at 922 (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012)).  Because Congress did exactly that when it enacted Section 1818(i)(1), the Fifth Circuit affirmed the district court's conclusion that it lacked subject matter jurisdiction to consider the constitutional claim.  *See Bank of Louisiana*, 919 F.3d at 930.

Toward the end of his brief, Burgess argues that Section 1818(i)(1) not only lacks an explicit withdrawal of federal jurisdiction over exogenous constitutional claims, but also omits any language that could be interpreted as an implicit removal of jurisdiction over such claims.  *See* Pl. Mot. at 29-31.  This argument rests principally on the Fifth Circuit's decision in *Cochran*, where the court of appeals applied the "*Thunder Basin*" factors to a statute governing the review of enforcement actions by the Securities and Exchange Commission ("SEC").  *See Cochran*, 20 F.4th at 199-212 (applying *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994)).  Courts turn to the *Thunder Basin* factors to determine whether a statute should be construed as implicitly withdrawing jurisdiction.  *See id.* at 204-05.  But *Thunder Basin* has no application here because, as the *Cochran* court pointed out, Section 1818(i)(1)—in contrast to the SEC statute—contains an **explicit** withdrawal of federal jurisdiction.  20 F.4th at 204.

The *Thunder Basin* factors, moreover, only "reinforce[]" the conclusion that Section 1818(i)(1) divests district courts of jurisdiction to consider collateral attacks on ongoing FDIC enforcement actions.  *See id.* (quoting *Bank of Louisiana*, 919 F.3d at 925).  As to the first factor, Burgess claims that he will be denied an opportunity for meaningful review if he is forced to "endure" the FDIC's administrative process to its conclusion before seeking review in a court of appeals.  Pl. Mot. at 30-31.  But Burgess' participation in the enforcement proceeding already has concluded: he filed his exceptions with the FDIC Board and is now awaiting its decision.  On the

- 15 -

one hand, if the Board's decision is favorable to him, he has no need for judicial review of the ALJ's Recommended Decision.  On the other hand, if the Board's decision is adverse, Burgess can obtain meaningful review from a court of appeals, which will have plenary authority to resolve all of his constitutional claims.  *See* 12 U.S.C. § 1818(h)(2); 5 U.S.C. § 706(2)(B); *see also Thunder Basin*, 510 U.S. at 215 (recognizing that Congress had provided an avenue for meaningful consideration of constitutional claims by authorizing review of the Commission's orders in the courts of appeals); *Bank of Louisiana*, 919 F.3d at 926-27 (concluding that the "meaningful review" factor was satisfied because the plaintiff was "already embroiled in an [FDIC] enforcement proceeding" and therefore did not "need . . . [to] take any additional risks" to assert its constitutional claims) (internal citation and emphasis omitted).[4]

As to the second *Thunder Basin* factor, Burgess argues that his exogenous constitutional claims are "wholly collateral" to the FDIC enforcement proceeding because he is pursuing challenges to the structure of the FDIC that are not tied to any substantive claim in the enforcement proceeding.  *See* Pl. Mot. at 31.  But Burgess' claims are not "wholly collateral"; he in fact raised them in his exceptions to the ALJ's Recommended Decision, and the stated purpose of this lawsuit is to enjoin the enforcement proceeding.  *See Bank of Louisiana*, 919 F.3d at 928 (concluding that constitutional claims were intertwined with the enforcement proceeding); *but see Cochran*, 20 F.4th at 207 (concluding that because the plaintiff was "challenging the [Securities] Exchange Act's statutory-review scheme itself," the "'wholly collateral' factor weighs against preclusion").

---

[4]   In *Thunder Basin*, the Court decided jurisdiction was lacking based on the opportunity for meaningful judicial review in the court of appeals without regard to the other factors.  *See* 510 U.S. at 215; *see also Bebo v. SEC*, 799 F.3d 765, 774 (7th Cir. 2015) ("We think the most critical thread in the case law is the first *Free Enterprise Fund* factor: whether the plaintiff will be able to receive meaningful judicial review without access to the district courts.").

As to the third *Thunder Basin* factor, Burgess argues that his structural constitutional claims "present questions of constitutional law as to which the FDIC has no special expertise." Pl. Mot. at 31. The Fifth Circuit rejected a similar argument in *Bank of Louisiana* where, citing cases from other circuits, it recognized that there are "various ways an agency [like the FDIC] might deploy its expertise on constitutional questions," including by resolving related statutory claims that might result in a favorable decision for the litigant, or by mooting the case through a finding in favor of the litigant, or by adopting a legal interpretation that sheds light on a constitutional question. *See* 919 F.3d at 929. Based on these considerations, the *Bank of Louisiana* court concluded that this factor also reinforced the conclusion that Section 1818(i) divested the court of jurisdiction to intercede in an FDIC enforcement action. *See id.* at 929-30.

In sum, Section 1818(i)(1) divests this Court of subject matter jurisdiction to enjoin or otherwise affect the ongoing FDIC enforcement action against Burgess.

**B.      There Is No Final Agency Action Subject To Judicial Review Under The APA.**

Examination of the applicable provisions of the APA provides further confirmation that the Court lacks subject matter jurisdiction over this lawsuit. The APA codifies the procedures and legal standards for judicial review of agency actions, even where—as in the case of FISA—another statute establishes the right to judicial review. *See Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987). Two types of agency actions are reviewable under the APA: those "made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, Burgess is not seeking review of an agency action made reviewable by statute, nor is he seeking review of a final agency action. Accordingly, the APA does not permit judicial review of Burgess' claims.

FISA's "tripartite regime of judicial review" vests the courts of appeals with jurisdiction to review "final [FDIC] Board orders" in enforcement matters. *MCorp Fin.*, 502 U.S. at 38 (discussing 12 U.S.C. § 1818(h)); *see also Bank of Louisiana*, 919 F.3d at 922 ("[S]ometimes Congress leapfrogs district courts by channeling claims through administrative review and directly to federal appellate courts."). When considering a petition for review of a final Board order, the court of appeals applies the APA standards of review. See 12 U.S.C. § 1818(h)(2) ("Review of such proceedings shall be had as provided in chapter 7 of Title 5."); *see, e.g.*, *Scott v. FDIC*, 684 F. App'x 391, 394 (5th Cir. 2017) (per curiam) (applying the APA's substantial evidence, abuse of discretion, and arbitrary and capricious standards to FDIC enforcement decision).

In addition to reviewing the agency's findings of fact and conclusions of law, the court of appeals "interpret[s] constitutional and statutory provisions" and determines whether the agency's decision is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B); *see also Thunder Basin*, 510 U.S. at 215 (recognizing that, even if the Federal Mine Safety and Health Commission was unable to resolve constitutional claims, Congress had provided an avenue for meaningful consideration of those claims by authorizing review of the Commission's orders in the courts of appeals). Here, instead of "wait[ing] for the agency to issue a Final Decision and then seek[ing] judicial review through a petition for review filed in an appropriate court of appeals," Pl. Mot. at 23, Burgess is attempting to collaterally attack non-final agency proceedings in this Court. Nothing in Section 1818(h) or any other provision of FISA permits this. Hence, this lawsuit does not seek review of an "[a]gency action made reviewable by statute." 5 U.S.C. § 704.

When, as here, "no other statute provides a private right of action, the 'agency action' complained of must be final agency action." *Franciscan All.*, 227 F. Supp. 3d at 676 (O'Connor, J.) (first quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004); then quoting 5

U.S.C. § 704).  As this Court previously recognized, an administrative action is "final agency action" under the APA if: (1) the agency's action is the "consummation of the agency's decision making process"; and (2) "the action [is] one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Franciscan All.*, 227 F. Supp. 3d at 676 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation omitted).  Burgess is not seeking review of a final agency action; the objective of his lawsuit is to prevent the FDIC Board from rendering a final decision.  *See* Cmplt. p.40 (requesting an injunction prohibiting the FDIC from continuing the enforcement action against him).

The Fifth Circuit has recognized that subject matter jurisdiction does not exist under the APA if no substantive statute authorizes review of the challenged agency action and the agency action is non-final.  *See Exxon Chemicals America v. Chao*, 298 F.3d 464, 466-67, 470 (5th Cir. 2002) (holding that, because the challenged agency remand order was non-final, and was not reviewable under a specific grant of authority in the substantive statute, the court of appeals lacked subject matter jurisdiction); *accord Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) ("Absent a specific and final agency action, we lack jurisdiction to consider a challenge to agency conduct."); *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) ("If there is no 'final agency action,' as required by the controlling statute, a court lacks subject matter jurisdiction.").

In sum, Section 1818 does not authorize judicial review of enforcement proceedings until the FDIC Board has issued a final decision, and Burgess is not seeking review of any final agency decision in this lawsuit.  Accordingly, subject matter jurisdiction does not exist under the APA. As a result, Burgess cannot carry his burden of establishing subject matter jurisdiction, and without that required showing, he cannot demonstrate a likelihood of success on the merits.  His motion

for a preliminary injunction should be denied.  *See Stevens*, 17 F.4th at 576 ("If the party requesting a preliminary injunction **cannot** show a substantial likelihood of success on the merits, the injunction should be denied and there is no need for the court to address the other requirements for a preliminary injunction.").

## II.   PLAINTIFF HAS NOT CLEARLY SHOWN A SUBSTANTIAL THREAT OF IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

The second preliminary injunction factor—"a substantial threat that the movant will suffer irreparable injury if the injunction is not granted"—also weighs heavily against the extraordinary remedy of a preliminary injunction.  *Franciscan All.*, 227 F. Supp. 3d at 676.  To be sure, Burgess contends that he will suffer an assortment of perils if the Court does not enjoin the enforcement proceeding.  For example, he claims that he will be deprived of an opportunity for meaningful review, that he will continue to be subjected to an unconstitutional administrative process, that he "will be forced to continue incurring a fortune in legal expenses," and that his reputation will be harmed.  Pl. Mot. at 18-21.  None of these purported injuries, individually or collectively, supports the issuance of a preliminary injunction.  That is because, for the most part, Burgess is complaining about purported injuries that he already has sustained, and which he could have averted (assuming, counterfactually, that subject matter jurisdiction exists in the district courts) by seeking relief years ago.  Furthermore, if the Board should enter a final decision adverse to him, Burgess can seek a stay at that time from the Board or a court of appeals.

A preliminary injunction is an equitable remedy, and it is an ancient maxim that "equity aids the vigilant, not those who slumber on their rights."  *Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960); 11 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 2946, at 417 (3d ed. 1973).  "Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no

apparent urgency to the request for injunctive relief." *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (internal citation omitted); *accord Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (explaining that "a party requesting a preliminary injunction must generally show reasonable diligence," and concluding that a six-year delay in seeking preliminary relief was unreasonable); *White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005) (per curiam) (affirming denial of injunctive relief where movant waited until the "eleventh hour" to seek relief); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2948.1 (2d ed. 1995) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.").

The procedural history of the enforcement action shows that Burgess has not been at all diligent in seeking a preliminary injunction; to the contrary, he has been slumbering on his rights for at least eight years. According to the Complaint, the FDIC "conducted an unrelenting investigation of Burgess" from 2010 to 2014. Cmplt. ¶ 59. In 2014, the FDIC formally opened an enforcement proceeding against him. *Id.* ¶ 60. An ALJ conducted a seven-day hearing in 2016. *Id.* ¶ 65. In 2017, the ALJ issued a recommended decision adverse to Burgess, which the Board adopted. *Id.* ¶¶ 66-67. Burgess appealed the decision to the Fifth Circuit, where it was remanded for further proceedings consistent with the Supreme Court's intervening decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). *Id.* ¶¶ 68, 70-72. In January 2022, a different ALJ conducted a three-day supplemental hearing and, on September 16, 2022, the ALJ issued a recommended decision. *Id.* ¶¶ 76, 77. At no point during this process did Burgess petition this Court, or any other district court, for a preliminary or permanent injunction halting the FDIC enforcement action.

Burgess states on page 19 of his brief that "a private citizen experiences a 'here-and-now' injury as soon as he or she is exposed to an unconstitutional process of the type at issue here." Pl. Mot. at 19 (quoting *Bowsher v. Synar*, 478 U.S. 714, 728 n.5 (1986)). Assuming that is so, by his own account, Burgess began to suffer "here-and-now" injuries as early as 2010 and yet, inexplicably he waited until 2022 to file this lawsuit. As a direct result of Burgess' protracted delay in seeking relief, he already has suffered most of the injuries that he incorrectly claims would be averted by a preliminary injunction. The critical fact, which Burgess tiptoes around, is that his involvement in the enforcement action already has concluded; he filed his exceptions to the ALJ's Recommended Decision on October 17, 2022, and there is nothing more for him to do. Cmplt. ¶ 78. There is no reason for him to incur additional legal fees while awaiting the Board's final decision.

Furthermore, it is hard to see how "the ongoing pendency of the Enforcement Proceeding is causing Burgess a reputational harm that can only be arrested by an injunction." Pl. Mot. at 19. The Board previously issued a decision adverse to Burgess in 2017 and the second ALJ issued a Recommended Decision adverse to Burgess in September 2022 that by regulation is publicly available. Cmplt. ¶¶ 67, 77. The mere fact that the enforcement proceeding is still pending could not exacerbate whatever reputational harm Burgess claims to have suffered because of the ALJ and Board decisions. Simply put, even if this Court had subject matter jurisdiction, Burgess waited far too long to seek a preliminary injunction. *See Benisek*, 138 S. Ct. at 1944 (holding that six-year delay was unreasonable).

Burgess' claims of irreparable harm miss the mark for an additional reason. If the Board issues a decision adverse to Burgess and, if he believes that prompt implementation of the decision would irreparably harm him, he can request a stay from the Board or from the Fifth Circuit. This

is not news to Burgess.  After the Board issued its prior decision in 2017, Burgess sought review in the Fifth Circuit and he filed a motion in the court of appeals requesting a stay of the FDIC's final order pending disposition of his petition for review.  Cmplt. ¶ 68.  The Fifth Circuit, applying the same four factors required for a preliminary injunction, granted the requested stay.  *See Burgess v. FDIC*, 871 F.3d 297, 303-04 (5th Cir. 2017).  In that matter, unlike this one, the resulting stay was entirely within the statutory procedures for enforcement actions and judicial review in the court of appeals.  The availability of injunctive relief from the Board and the Fifth Circuit militates against this Court interceding in the enforcement proceeding.

## III.   PLAINTIFF HAS NOT CLEARLY SHOWN THAT THE BALANCING OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR THE ISSUANCE OF A PRELIMINARY INJUNCTION.

The equities favor denying the motion for a preliminary injunction and allowing the enforcement action to continue, consistent with the system Congress put in place.  The enforcement action against Burgess has been underway for years.  The supplemental hearing has taken place, and the ALJ has issued a recommended decision.  *See* Pl. Mot. at 13.  Burgess filed his exceptions to the recommended decision on October 17, 2022.  *See id.* at 34.  It is not in the public interest to halt an administrative proceeding *after* all parties have invested significant time and effort to address the disputed issues, including claims and defenses that can be decided on appeal to the Fifth Circuit, as envisioned by Congress.  *See* 12 U.S.C. § 1818(h)(2); *see also* 12 U.S.C. § 1818(h)(3) (noting that, unless otherwise ordered, judicial review "*shall not . . . operate as a stay of any order issued by the agency*") (emphasis added); *accord Benisek*, 138 S. Ct. at 1944-

45 ("In considering the balance of equities among the parties, we think that plaintiffs' unnecessary, years-long delay in asking for preliminary injunctive relief weighed against their request.").[5]

Burgess also argues the equities favor an injunction because, according to Burgess, the enforcement action has harmed "the reputation of the Bank."  Pl. Mot. at 21 (citation omitted). But he is conflating his own reputation with that of Herring Bank.  *Id.*  Bank regulation in the United States strengthens the reputation of the individual banks and the banking system as a whole. Indeed, as the Supreme Court observed in 1947, "[b]anking is one of the longest regulated and most closely supervised of public callings."  *Fahey v. Mallonee*, 332 U.S. 245, 250 (1947) (addressing the regulation of national banks).  An insured depository institution is regulated "from its cradle to its corporate grave."  *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 145 (1982) (citation omitted); *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 329 (1963) (considering the wide array of supervisory tools available to bank regulators, the "frequent and intensive" nature of the examination process, and noting that "the agencies maintain virtually a day-to-day surveillance of the American banking system."); 1 K. Davis, Administrative Law Treatise § 4.04, at 247 (1958) ("The regulation of banking may be more intensive than the regulation of any other industry.").  There is good reason for this oversight; at the end of 2021, deposits in United States banks totaled approximately $17.67 trillion and FDIC insures each qualifying account up to a maximum of $250,000.[6]

---

[5]   Moreover, Burgess himself notes that the Fifth Circuit previously issued a stay of the FDIC's 2017 final decision, Pl. Mot. at 22, further demonstrating that if the FDIC enters an adverse ruling against him in the current proceeding, he has a mechanism for appealing that decision, which includes a potential stay of enforcement of the decision pending judicial review in the court of appeals.

[6]   12 U.S.C. § 1821(a)(1)(E); FDIC 2021 Annual Report at 183, https://www.fdic.gov/about/financial-reports/reports/2021annualreport/2021-arfinal.pdf.

The regulatory protections prescribed by Congress engender confidence in the nation's banking system, thereby strengthening the country's economic stability.  *Cf. generally Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 767 (N.D. Tex. 1990) (noting generally, "[t]he authority Congress vested in the FDIC pursuant to the FDIA is intentionally broad," given that the agency fulfills a "vital statutory mission").  The FDIC's role in ensuring confidence in the nation's financial system—through administrative enforcement—tips the balance of equities, at the very least, against the issuance of a preliminary injunction.  This is particularly so given plaintiff's unquestioned ability to seek relief in the Fifth Circuit.  Any other result would run counter to Congress' intention and render nugatory the unambiguous statutory review procedures set forth in 12 U.S.C. § 1818.

## CONCLUSION

For the foregoing reasons, the FDIC respectfully requests that plaintiff's motion for a preliminary injunction be denied.

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew J. Dober
Senior Counsel

 /s/ *Andrew A. Nicely*

| | |
|---|---|
| Bryce C. Quine (Tex. No. 24032976) | Andrew A. Nicely (Va. No. 41750) |
| Arthur E. Anthony (Tex. No. 24001661) | Daniel Kurtenbach |
| 600 North Pearl Street, Suite 700 | 3501 Fairfax Drive, D-7028 |
| Dallas, Texas  75201 | Arlington, VA 22226-3500 |
| Telephone:  (972) 761-8520 | Tel.:  (703) 516-5729 |
| Alternate Tel.: (972) 761-2237 | Fax:  (703) 562-2477 |
| Email: bquine@fdic.gov | Email: anicely@fdic.gov |
| Email: aranthony@fdic.gov | |

*Counsel for Defendants*

DATED:   October 24, 2022

- 25 -

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record registered to receive such notices.

/s/  *Andrew A. Nicely*
Andrew A. Nicely