**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **CORNELIUS CAMPBELL BURGESS**, <br><br> *Plaintiff*, <br><br> *v.* <br><br> **FEDERAL DEPOSIT INSURANCE CORPORATION**; **MARTIN J. GRUENBERG**, in his official capacity as Acting Chairman of the FDIC; **MICHAEL J. HSU**, in his official capacity as a Director of the FDIC; **ROHIT CHOPRA**, in his official capacity as a Director of the FDIC; and **JENNIFER WHANG**; in her official capacity as an Administrative Law Judge, <br><br> *Defendants*. | Civil Action No. 7:22-cv-00100-O <br><br> The Honorable Reed O'Connor, <br> United States District Judge, Presiding |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR RECONSIDERATION**

James T. Dawson (TX Bar No. 24094618)
   *Pro Hac Vice* (DC Bar No. 1602502)
   Email: jamesdawson@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6588
Facsimile: (202) 639-6604

Manuel G. Berrelez (TX Bar No. 24057760)
   Email: mberrelez@velaw.com
Thomas P. Mitsch (TX Bar No. 24102218)
   Email: tmitsch@velaw.com
James F. Hopper (TX Bar No. 24116535)
   Email: jhopper@velaw.com
Madelyn C. Stanley (TX Bar No. 24121529)
   Email: mstanley@velaw.com
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716

*Counsel for Plaintiff Cornelius Campbell Burgess*

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD................................................................................................... 4

BACKGROUND .......................................................................................................... 5

    A.   Legal Background .......................................................................................... 5

        1.   The Supreme Court's Decision in *Collins* (June 2021) ......................... 5

        2.   The Fifth Circuit's En Banc Decision in *Cochran* (December 2021) ................... 7

        3.   The Fifth Circuit's Panel Decision in *Community Financial* (October 2022)........ 9

    B.   Procedural History ....................................................................................... 12

REASONS TO GRANT RECONSIDERATION.......................................................... 13

I.   The Portion of *Community Financial* on Which the Order Depended Cannot Be Relied Upon Because, As Interpreted by the Order, It Conflicts with the Fifth Circuit's En Banc Decision in *Cochran*.................................................................. 13

II.   Alternatively, This Court Can Read *Community Financial* and *Cochran* In Concert.......... 19

    A.   *Community Financial* Has No Applicability When, As Here, a Plaintiff Pressing a Removability Argument Seeks Prospective Relief <u>Only</u>. ........................................ 19

    B.   The Portion of *Community Financial* on Which the Order Relied Was Dicta. ........... 22

CONCLUSION............................................................................................................ 265

CERTIFICATE OF SERVICE .................................................................................... 26

CERTIFICATE OF COMPLIANCE ........................................................................... 27

## TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

*Austin v. Kroger Tex., L.P.*,
   864 F.3d 326 (5th Cir. 2017) ................................................................... 5

*Bass v. Butler*,
   116 F. App'x 376 (3d Cir. 2004) ........................................................... 23

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ............................................................................. 21

*Broussard v. S. Pac. Transp. Co.*,
   665 F.2d 1387 (5th Cir. 1982) (en banc) ............................................. 14

*Brown v. United States*,
   No. 3:20-cv-063, 2021 WL 3729296 (S.D. Miss. Aug. 23, 2021) ........... 4

*Calcutt v. FDIC*,
   37 F.4th 293 (2022) .............................................................. 11, 12, 16

*Calcutt v. FDIC*,
   No. 22A255, 2022 WL 4546340 (U.S. Sept. 29, 2022) ................... 11, 17

*Cochran v. SEC*,
   20 F.4th 194 (5th Cir. 2021) .................................................... *passim*

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021) ............................................................ *passim*

*Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
   51 F.4th 616 (5th Cir. 2022) ................................................... *passim*

*Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
   558 F. Supp. 3d 350 (W.D. Tex. Aug. 31, 2021) ................................ 11

*Consumers' Research v. Consumer Prod. Safety Comm'n*,
   No. 6:21-cv-256, 2022 WL 1577222 (E.D. Tex. Mar. 18, 2022) ....... 14, 15

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ............................................................................. 15

*Domain Prot., LLC v. Sea Wasp, LLC*,
   No. 4:18-cv-792, 2019 WL 3933614 (E.D. Tex. Aug. 20, 2019) ............. 4

*Douthit v. Dean*,
   568 F. App'x 336 (5th Cir. 2014) ........................................................... 5

*Felder v. Johnson*,
   204 F.3d 168 (5th Cir. 2000) ............................................................... 23

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) ..................................................................... 15, 21

**Cases—Continued:** Page(s)

*Geiger v. Allen*,
   850 F.2d 330 (7th Cir. 1988) ............................................................... 21

*Howell Petroleum Corp. v. Samson Res. Co.*,
   903 F.2d 778 (10th Cir. 1990) .............................................................. 23

*Hoyt v. Lane Constr. Corp.*,
   927 F.3d 287 (5th Cir. 2019) ............................................................... 19

*Johnson v. Moral*,
   843 F.2d 846 (5th Cir. 1988) ............................................................... 13

*Johnson v. Thayler*,
   421 F. App'x 431 (5th Cir. 2011) ........................................................... 5

*KH Outdoor, L.L.C. v. City of Trussville, Ala.*,
   366 F. Supp. 2d 1141 (N.D. Ala. 2005) ............................................... 19

*Latham v. Shalala*,
   36 F.3d 482 (5th Cir. 1994) ................................................................. 13

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
   910 F.2d 167 (5th Cir. 1990) ................................................................. 4

*Lirette v. N.L. Sperry Sun, Inc.*,
   810 F.2d 533 (5th Cir. 1987) ............................................................... 16

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ................................................................. 4

*Little v. Reclaim Idaho*,
   140 S. Ct. 2616 (2020) ....................................................................... 17

*Matter of Howard*,
   972 F.2d 639 (5th Cir. 1992) ............................................................... 13

*Matter of Swift*,
   129 F.3d 792 (5th Cir. 1997) ............................................................... 16

*Merrill v. Milligan*,
   142 S. Ct. 879 (2022) ......................................................................... 17

*M-I LLC v. FPUSA, LLC*,
   No. SA:15-cv-406, 2015 WL 4460305 (W.D. Tex. July 21, 2015) ........... 4

*Morris-Shea Bridge Co. v. Cajun Indus., LLC*,
   No. 3:20-cv-00342, 2021 WL 4096555 (S.D. Tex. May 17, 2021) ........... 4

*New York Life Ins. Co. v. Travelers Ins. Co.*,
   92 F.3d 336 (5th Cir. 1996) ................................................................. 14

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................... 17

iii

**Cases—Continued:** **Page(s)**

*Ochoa-Salgado v. Garland*,
    5 F.4th 615 (5th Cir. 2021) ................................................................ 16, 23

*Providence Title Co. v. Truly Title, Inc.*,
    No. 4:21-cv-147, 2021 WL 5003273 (E.D. Tex. Oct. 28, 2021) ............... 4

*Racal Survey U.S.A., Inc. v. M/V COUNT FLEET*,
    231 F.3d 183 (5th Cir. 2000) .................................................................. 14

*Richards v. J.A. Jones Constr. Co.*,
    782 F.2d 504 (5th Cir. 1986) .................................................................. 16

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) .................................................................. 16

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ........................................................................... 10

*Smith v. Reg'l Transit Auth.*,
    756 F.3d 340 (5th Cir. 2014) .................................................................. 14

*Thrift v. Estate of Hubbard*,
    44 F.3d 348 (5th Cir. 1995) .................................................................... 14

*Trump v. Int'l Refugee Assistance Project*,
    137 S. Ct. 2080 (2017) ........................................................................... 17

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) ................................................................................ 23

*United States v. Smith*,
    386 F.3d 753 (6th Cir. 2004) .................................................................. 22

*United States v. Tompkins*,
    130 F.3d 117 (5th Cir. 1997) .................................................................. 18

*United States v. Wilson*,
    776 F.3d 402 (6th Cir. 2015) .................................................................. 23

*Wynne v. Rochelle*,
    385 F.2d 789 (5th Cir. 1967) .................................................................. 21


**Rules:**

Federal Rule of Appellate Procedure 28(j) ............................... 11, 16, 22, 23
Federal Rule of Appellate Procedure 35(c) ............................................... 2
Federal Rule of Appellate Procedure 40(a)(1)(B) ..................................... 2
Federal Rule of Civil Procedure 54(b) ................................................. 4, 5
Federal Rule of Civil Procedure 59(e) ................................................. 4, 5
Federal Rule of Civil Procedure 60(b) ..................................................... 5

**Rules—Continued:**                                                           **Page(s)**

Fifth Circuit Rule 35.4 ................................................................................ 2
Fifth Circuit Rule 40.4 ................................................................................ 2

**Other Authorities:**

Appellants' Motion to Stay, *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*
   (5th Cir. No. 21-50826), Doc. 00516039414 (Oct. 1, 2021) ...................................... 11

Appellants' Responsive Rule 28(j) Letter, *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*
   (5th Cir. No. 21-50826), Doc. 00516368486 (June 23, 2022)................................... 11

Appellee's Rule 28(j) Letter, *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*
   (5th Cir. No. 21-50826), Doc. 00516360618 (June 16, 2022)................................... 11

Application for Stay, *Calcutt v. FDIC* (No. 22A255) (Sept. 22, 2022)........................ 17

Br. for Appellants, *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*
   (5th Cir. No. 21-50826), Doc. 00516093957 (Nov. 15, 2021) ................................. 11

Br. for Appellees, *Consumers' Research v. Consumer Prod. Safety Comm'n*
   (5th Cir. No. 22-40328), 2022 WL 6164656 (Sept. 30, 2022) ................................. 15

Reply & Resp. Br. of the United States, *Collins v. Yellen*,
   141 S. Ct. 1761 (Nos. 19-422, 19-563), 2020 WL 6322317 (Oct. 23, 2020). .......................... 17

Tr. of *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB* Oral Argument (May 9, 2022).......... 23

## <u>INTRODUCTION</u>

For nearly a decade, unelected bureaucrats at the Federal Deposit Insurance Corporation ("FDIC") have been tirelessly prosecuting a deeply flawed administrative enforcement proceeding against Burgess.  Last month, Burgess filed a motion for a preliminary injunction seeking to halt the continuation of that proceeding because it is plagued by multiple constitutional infirmities.  On November 6, 2022, this Court entered an Order that granted that motion in part and denied it in part.  ECF No. 31 ("Order"); *see* ECF No. 49.  Burgess is grateful that the Court has recognized the Enforcement Proceeding violates his Seventh Amendment rights, and he is especially appreciative that this Court has endeavored to treat this case with appropriate urgency despite the complex nature of the issues it presents.  That said, Burgess respectfully submits that the portion of the Order that denied relief as to Counts 1 and 2 of the Complaint should be reconsidered.

Those Counts allege that several of the key actors in the Enforcement Proceeding—including the appointed directors of the FDIC and the administrative law judges ("ALJs") used by that agency—enjoy an unconstitutional level of protection from removal.  Burgess has requested that this Court prospectively enjoin the FDIC from continuing the Enforcement Proceeding unless and until those removability defects are cured.  In its Order, this Court agreed that the constitutional arguments made in Counts 1 and 2 of the Complaint "have merit," but nonetheless concluded that it could not grant relief as to those Counts because Burgess has not demonstrated that he has suffered a "compensable harm" attributable to the removability defects.  Order at 17.

This Court's holding on the remedial issues relied primarily on the Fifth Circuit's recent decision in *Community Financial Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. filed* Nov. 14, 2022 (No. 22-448).  The *Community Financial* opinion was published on October 19, 2022, which was thirteen days after Burgess filed his Complaint and four days after Burgess filed his memorandum in support of his motion for a preliminary injunction.  *See* ECF

No. 15-1 ("Mot.").[1]  Given the recency of *Community Financial* and the expedited timeline of this case, the parties did not have a chance to discuss *Community Financial* in their papers.

The plaintiffs in *Community Financial* challenged the Payday Lending Rule ("Rule") promulgated by the Consumer Financial Protection Bureau ("CFPB") on the basis that the CFPB's director was unconstitutionally shielded from removal at the time of the Rule's promulgation.  The plaintiffs argued throughout the case that the appropriate remedy was vacating that Rule, and they also suggested in several of their early filings that the CFPB should be enjoined from enforcing that rule on a going-forward basis.  *Community Financial* held that the plaintiffs were not entitled to vacatur of the Rule.  And, as relevant here, *Community Financial* also observed that the "determination as to whether an unconstitutional removal protection inflicted harm remains the same whether the petitioner seeks retrospective or prospective relief."  51 F.4th at 631 (internal quotation marks omitted).  *Community Financial* interpreted the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), "not [to] rest on a distinction between prospective and retrospective relief."  *Id.*  Relying on *Community Financial*, this Court denied a preliminary injunction as to Counts 1 and 2 because Burgess had failed to demonstrate "that the unconstitutional removal provision[s] inflicted harm" on him—a requirement that, in the Court's view, applied even in cases where the plaintiff is only "seeking prospective relief."  Order at 18.

That holding should now be reconsidered.  Insofar as *Community Financial* is interpreted to require depriving Burgess of any remedy—despite being subjected to ongoing enforcement proceedings by unconstitutionally insulated officials who are threatening to deprive him of his

---

[1] Pursuant to Fifth Circuit Rules 35.4 and 40.4 and Federal Rules of Appellate Procedure 35(c) and 40(a)(1)(B), the deadline for the parties to file petitions for rehearing or rehearing en banc in *Community Financial*, if any, is 45 days after the issuance of the Opinion—i.e., on or before December 5, 2022.  No such petition has yet been filed.

On November 14, 2022, the Solicitor General filed a petition for a writ of certiorari in *Community Financial*. The government's petition concerns a separate portion of the *Community Financial* opinion that is not relevant here—i.e., the panel's holding that the funding mechanism for the CFPB violates the separation of powers.

right to ever participate in the banking industry again—it is plainly in conflict with the Fifth Circuit's prior en banc decision in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021), *cert. granted*, 142 S. Ct. 2707 (2022).  *Cochran* held that *Collins*'s "compensable harm" requirement applies when a plaintiff "seek[s] to 'void' the acts of an[ agency] official" after the fact, but **does not** apply when a plaintiff seeks equitable relief to secure "an administrative adjudication untainted by separation-of-powers violations" in a suit for "pre-enforcement review."  *Id.* at 210 n.16.  This case falls squarely into the latter camp.  And to the extent the two cases are inconsistent, this Court is bound to follow *Cochran* instead of *Community Financial*, both because *Cochran* is the earlier-in-time decision and because *Cochran* is an en banc decision.  Moreover, the parties in *Community Financial* never cited *Cochran* in any of their briefs or at argument, and *Community Financial* might well have been decided differently had they done so.  The Fifth Circuit has repeatedly held that, when a critical case or argument is not briefed to a panel, future courts are not bound to follow that panel's ruling, and can instead consider the implications of that case or argument for themselves.  *See infra* Section I.

Given *Cochran*'s plain holding that *Collins*'s "compensable harm" requirement does not apply to suits like this one, the most appropriate course of action would be for this Court to issue a new Order that follows *Cochran* and does not rely on *Community Financial*.  But, at a minimum, this Court should strive to interpret *Community Financial* in a way that reconciles that case with *Cochran*.  *See infra* Section II.  There are two ways to do so.

First, this Court can and should recognize that *Community Financial* applies only to after-the-fact efforts to void agency actions.  *Community Financial*, like *Collins*, was a case in which the plaintiffs sought to vacate an agency action.  But in this case, Burgess is not seeking to vacate any FDIC action; indeed, he has disclaimed all forms of retrospective relief.  Nor does Burgess

seek equitable relief to prevent the FDIC from enforcing an already-issued final agency action. *Community Financial* had no occasion to consider whether and how *Collins* might apply when, as here, the plaintiff seeks only forward-looking relief. *Community Financial*, therefore, has no applicability here. *See infra* Section II.A.

Second, this Court could recognize that the snippet of *Community Financial* on which it previously relied was dicta. After the Fifth Circuit heard oral argument in *Community Financial*, the plaintiffs in that case filed a letter in which they conceded that "th[e] Court need not resolve whether *Collins* applies to prospective relief" and should instead "assume" that "*Collins* applies to the relief sought here." That letter amounted to a forfeiture of the argument that *Collins* did not apply to requests for prospective relief, meaning that whatever comments the *Community Financial* panel later delivered on this issue were non-binding dicta. *See infra* Section II.B.

## LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not explicitly "recognize a 'motion for reconsideration' *in haec verba*," the Fifth Circuit has consistently held that parties seeking to have a prior order reconsidered "on the merits" may file a motion under Rules 54(b), 59(e), or 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). A motion for reconsideration of an order denying a preliminary injunction is within the office of Rule 54(b), which provides that "any order" that "does not end the action . . . may be revised at any time before the entry of a judgment."[2] "Under Rule 54(b), the trial court is free to reconsider and reverse its

---

[2] *See Providence Title Co. v. Truly Title, Inc.*, No. 4:21-cv-147, 2021 WL 5003273, at *3 (E.D. Tex. Oct. 28, 2021) (construing a motion to reconsider a preliminary-injunction order as a motion under Rule 54(b)); *Brown v. United States*, No. 3:20-cv-063, 2021 WL 3729296, at *5 (S.D. Miss. Aug. 23, 2021) (same); *Morris-Shea Bridge Co. v. Cajun Indus., LLC*, No. 3:20-cv-00342, 2021 WL 4096555, at *1 (S.D. Tex. May 17, 2021) (same); *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-cv-792, 2019 WL 3933614, at *1 (E.D. Tex. Aug. 20, 2019); *M-I LLC v. FPUSA, LLC*, No. SA:15-cv-406, 2015 WL 4460305, at *1 (W.D. Tex. July 21, 2015) (same).

decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (internal quotation marks omitted). A district court's "power to reconsider or modify interlocutory rulings" under Rule 54(b) "is not cabined by the heightened standards for reconsideration" under Rule 59(e); indeed, given that Rule 54(b) is substantially "more flexible" than Rule 59(e), the court may consider "new arguments" that were not raised in prior briefing—an authority that "reflect[s] the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337 (internal quotation marks omitted).[3]

## **BACKGROUND**

### A.   **Legal Background**

#### 1.   **The Supreme Court's Decision in *Collins* (June 2021)**

In *Collins*, the Supreme Court confronted a challenge to certain actions taken by the Federal Housing Finance Agency ("FHFA"). The FHFA is an independent agency created by the Housing and Economic Recovery Act of 2008 to regulate two of the nation's providers of mortgage financing (Fannie Mae and Freddie Mac). 141 S. Ct. at 1770, 1772-73. Shortly after coming into existence, the FHFA placed Fannie Mae and Freddie Mac into conservatorship and then agreed to infuse them with large amounts of capital in exchange for quarterly dividend payments. *Id.* at 1170. In 2012, the FHFA brokered a new arrangement (the "third amendment") under which the

---

The Fifth Circuit has explained that, when a district court is asked to consider an "interlocutory order," Rule 54(b) provides the proper framework. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (emphasis added). And a "district court's denial of a motion for a preliminary injunction is an . . . interlocutory order." *Douthit v. Dean*, 568 F. App'x 336, 337 (5th Cir. 2014); *accord Johnson v. Thayler*, 421 F. App'x 431, 431 (5th Cir. 2011). By contrast, a request to "reconsider a **judgment**" is considered under Rule 59(e), so long as it is filed within 28 days after entry of that judgment. *Austin*, 864 F.3d at 336 (emphasis added). When a motion seeks reconsideration of a judgment older than 28 days, or reconsideration of any "final" order, the motion is considered under Rule 60(b).

[3] In his Opposition to Defendants' Motion for Reconsideration, Burgess noted that the Defendants improperly raised new arguments in their motion. *See* ECF No. 37 at 1-2. Burgess's arguments here are different in that, as explained above, *Community Financial* was not issued until **after** Burgess filed his motion for a preliminary injunction.

prior dividend formula was replaced with a requirement that Fannie Mae and Freddie Mac make enormous quarterly payments to the Treasury Department.  *See id.*  The third amendment stayed in place for four years, until it was replaced by the fourth amendment in 2021.  *See id.* at 1774.

The *Collins* plaintiffs were shareholders in Fannie Mae and Freddie Mac.  In 2016, they filed a lawsuit challenging the third amendment.  They argued, among other things, that the FHFA was unconstitutionally structured because it was headed by a single Director who could only be fired by the President for cause.  141 S. Ct. at 1175.  The plaintiffs requested a declaration that the FHFA was unconstitutional, an injunction ordering the Treasury to return the payments made under the third amendment, vacatur of the third amendment, and an injunction preventing the FHFA "from taking any further action to implement the third amendment."  *Id.*

On the merits, the Supreme Court agreed that the statutory restrictions on the President's power to remove the FHFA Director violated the separation of powers.  141 S. Ct. at 1183-87.  Having concluded that the FHFA was unconstitutionally structured, the Court then turned to the question of remedies.  The Court began its discussion by noting that the plaintiffs "no longer ha[d] a live claim for prospective relief" and that "the **only remaining . . . question** concern[ed] retrospective relief."  141 S. Ct. at 1787; *see id.* at 1795 (Gorsuch, J., concurring) ("[T]he only question before us concerns retrospective relief."); *id.* at 1800 (Kagan, J., concurring in part) (concurring as to the remedial analysis because the Court "well explains why **backwards-looking** relief is not always necessary to redress a removal violation" (emphasis added)).  That was so because the third amendment—the one "that had caused the shareholders' injury"—had been superseded by a fourth amendment during the appeal.  *Id.* at 1780 (majority).  And because the third amendment was "no longer in place, the shareholders no longer ha[d] any ground" for seeking "prospective relief," but did "retain an interest in the retrospective relief they [had] requested,"

namely "an order setting aside the [third] amendment and requiring the return . . . of all dividend payments made pursuant to it." *Id.* at 1787 (internal quotation marks and brackets omitted).

Given that requests for prospective relief were moot, the Court limited its discussion to the propriety of the plaintiffs' requested retrospective remedy.   The Court held that there was "no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void" because "[a]ll the officers who headed the FHFA during the time in question were properly appointed." 141 S. Ct. at 1787 (emphasis removed).   But the Court then noted:

> That does not necessarily mean, however, that the shareholders have no entitlement to retrospective relief. . . .  [I]t is still possible for an unconstitutional provision to inflict compensable harm.  And the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out.  Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal.  Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way.  In those situations, the statutory provision would clearly cause harm.

*Id.* at 1788-89.  The Court then remanded so that the lower courts could determine whether the plaintiffs had suffered a "compensable harm" that would entitle them to relief. *Id.* at 1789.

### 2.      The Fifth Circuit's En Banc Decision in *Cochran* (December 2021)

Some six months after *Collins* was decided, the Fifth Circuit held in *Cochran* that the judicial-review provision in the Exchange Act did not divest district courts of subject-matter jurisdiction to entertain a lawsuit alleging that the SEC's ALJs enjoyed an unconstitutional level of protection from removal.  20 F.4th at 198.  Ms. Cochran's lawsuit "did not seek review of any particular SEC order," but rather sought (1) "a declaration that SEC ALJs are unconstitutionally insulated from . . .  removal" and (2) an "injunction" that would prospectively "bar[] the SEC from continuing its administrative proceedings against her." *Id.* at 213.  The Fifth Circuit held that the District Court had jurisdiction to consider Cochran's request for those remedies, which are

identical to the remedies Burgess seeks in this lawsuit.  And this Court's Order in turn found that the merits "analysis in this case should be identical" to the merits analysis in *Cochran*, given that Mr. Burgess and Ms. Cochran are pursuing overlapping legal theories.  Order at 13.

But this Court's Order did not cite or otherwise discuss footnote 16 of the *Cochran* decision, which provided an important analysis of the Supreme Court's *Collins* decision.  The dissenters in the *Cochran* case argued that, because the Supreme Court has "recognized a meaningful opportunity to bring post-enforcement Appointments Clause challenges," and because "the injury Cochran would suffer from an enforcement proceeding presided over by an unconstitutionally insulated ALJ is supposedly less 'serious' than the injury caused by an enforcement proceeding presided over by an unconstitutionally appointed ALJ," it must be the case that Cochran would "have a meaningful opportunity for post-enforcement judicial review of her claim."  *Cochran*, 20 F.4th at 210 n.16; *see id.* at 243-44 (Costa, J., dissenting).  The *Cochran* majority then explained that:

> In making this curious argument, the dissenting opinion relies solely on the Supreme Court's recent decision in *Collins*, which held that the Director of the [FHFA] was unconstitutionally insulated from the President's removal power, but that this constitutional defect did not render the Director's acts "void." 141 S. Ct. at 1787.  ***Collins* does not impact our conclusion in this case because Cochran does not seek to "void" the acts of any SEC official.**  Rather, she seeks an administrative adjudication untainted by separation-of-powers violations.

*Id.* at 210 n.16 (majority) (emphasis added).  Footnote 16 of *Cochran* correctly read the remedial discussion in *Collins* as limited to cases where the plaintiff sought **retrospective** relief, such as "void[ing]" an agency's prior act.  The majority found that *Collins* simply "does not impact" the analysis when a plaintiff seeks **prospective** relief, as Ms. Cochran had through her request for "an injunction barring the SEC from continuing its administrative proceedings against her."  *Id.* at 213.  Judge Oldham's six-Judge concurrence in *Cochran* likewise read *Collins* as a case that dealt only

with the requirements for "winning **retrospective** relief."  *Id.* at 232 (Oldham, J., concurring) (emphasis added).  At the very least—and regardless of whether the distinction is phrased in the argot of "prospective vs. retrospective" relief—the *Cochran* majority plainly held that *Collins* does not forbid equitable relief to stop an ongoing proceeding before unconstitutionally insulated adjudicator(s), where the plaintiff is not seeking to "void" any already-extant agency decision. Indeed, the majority specifically explained that if, as the dissent suggested, *Collins*' remedial analysis would foreclose relief on Ms. Cochran's removal claim in a post-enforcement petition for review, that would **strengthen** the majority's conclusion that only **pre-enforcement review** offered the prospect of "**meaningful judicial review**"—because it would provide the only path to relief for Ms. Cochran.  *Id.* at 210 n.16 (majority) (emphasis added).

### 3.    The Fifth Circuit's Panel Decision in *Community Financial* (October 2022)

The plaintiffs in *Community Financial* were payday lenders and other credit-access companies who challenged the validity of the CFPB's 2017 Payday Lending Rule on various grounds, including, as relevant here, a claim that the CFPB Director was unconstitutionally shielded from removal at the time of that Rule's promulgation.  *See Community Financial*, 51 F.4th at 623, 625-26.  Their initial Complaint was filed on April 9, 2018.[4]  As of that time, the Payday Lending Rule had been promulgated but was not scheduled to go into effect until August 2019, and the CFPB had announced an intent to begin notice-and-comment rulemaking to reconsider the rule given the change in Administrations.[5]  The plaintiffs' Complaint alleged that the Payday Lending "Rule must . . . be invalidated and enjoined" due to the removability problem,[6]

---

[4] *Comm. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, No. 1:18-cv-295 [hereinafter "*Community Financial* District Court Docket"], ECF No. 1 (W.D. Tex. Apr. 9, 2018).

[5] *Community Financial* District Court Docket, ECF No. 16 at 2 (May 31, 2018).

[6] *Community Financial* District Court Docket, ECF No. 1 at ¶ 76 (Apr. 9, 2018).

and the plaintiffs requested that the Court issue an "order and judgment holding unlawful, enjoining, and setting aside the [Payday Lending] Rule."[7]  Before the Defendants answered, the Court entered an order staying the lawsuit pending the completion of the CFPB's rulemaking process.[8]

The case was then dormant for almost nine months, during which time (1) the Supreme Court decided *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020); and (2) the CFPB promulgated a final rule that partially revoked the Payday Lending Rule.  The plaintiffs then filed an amended Complaint, which claimed that the surviving portions of the Payday Lending Rule were "void *ab initio*" because the CFPB was "unconstitutionally structured" when the original Rule was promulgated.[9]  The plaintiffs' amended Complaint also requested that the Court issue an order "holding unlawful, enjoining enforcement of, and setting aside the 2017 Rule."[10]

The parties then filed cross-motions for summary judgment.  Shortly after those motions were fully briefed, the Supreme Court decided *Collins*.  The plaintiffs advised the district court in a supplemental filing that, in their view, "*Collins* created a standard for deciding when to grant 'retrospective relief'" but "did not purport to limit prospective relief," which the plaintiffs claimed to have sought "by requesting an injunction against the future enforcement of" surviving portions

---

[7] *Id.* at pp. 27, 38 (wherefore clauses).

[8] *Community Financial* District Court Docket, ECF No. 36 (Aug. 7, 2018) and ECF No. 56 (Mar. 1, 2019).

[9] *Community Financial* District Court Docket, ECF No. 76 at ¶¶ 8, 95 (Aug. 28, 2020).

[10] *Id.* at 41 (wherefore clauses); *see id.* at ¶ 115 (claiming the Rule should "be invalidated and enjoined"); *see also Community Financial* District Court Docket, ECF No. 80 at 31 (Sept. 25, 2020) ("[T]he 2017 Rule, and any current effort to enforce it, unconstitutionally regulates Plaintiffs and must be enjoined.").

of the Payday Lending Rule.[11]  The District Court entered an order granting summary judgment to the CFPB on August 31, 2021,[12] and the plaintiffs appealed to the Fifth Circuit.

On appeal, the plaintiffs initially renewed their argument that *Collins* did not apply to requests for "**prospective** relief . . . like the injunction [they] sought."[13]  Their contention was that they were "entitle[d] . . . to prospective relief" because the CFPB "lacked authority to promulgate the Rule because its director at the time was unconstitutionally insulated from removal."[14]

None of the parties' appellate briefs cited the Fifth Circuit's en banc decision in *Cochran*, which was issued after the plaintiffs filed their opening brief and before the CFPB filed its response brief.  Nor was the *Cochran* decision mentioned at oral argument or in any Rule 28(j) letter.

After all of the briefs in *Community Financial* were filed and the case had been argued to the Fifth Circuit, the Sixth Circuit issued its decision in *Calcutt v. FDIC*, 37 F.4th 293 (2022), *mandate recalled and stayed*, No. 22A255, 2022 WL 4546340 (U.S. Sept. 29, 2022).  The government submitted the *Calcutt* opinion to the *Community Financial* panel in a letter pursuant to Federal Rule of Appellate Procedure 28(j), and argued in that letter that *Calcutt* supported its theory that the requirement to show a "compensable" harm "'remain[ed] the same whether the [challenger] seeks retrospective or prospective relief.'"[15]  The plaintiffs then filed a responsive letter stating that the "th[e] Court need not resolve whether *Collins* applies to prospective relief."[16]

---

[11] *Community Financial* District Court Docket, ECF No. 91 at 1 (June 30, 2021) (emphasis omitted); *id.* at 3 (plaintiffs claiming that they were seeking "**prospective** relief against future regulatory enforcement" (emphasis altered)).

[12] *Community Financial* District Court Docket, ECF No. 103 (Aug. 31, 2021) (reported at 558 F. Supp. 3d 350).

[13] Br. for Appellants at 16, *Community Financial* (5th Cir. No. 21-50826), Doc. 00516093957 (Nov. 15, 2021).

[14] Appellants' Motion to Stay at 15, *Community Financial* (5th Cir. No. 21-50826), Doc. 00516039414 (Oct. 1, 2021).

[15] Appellee's Rule 28(j) Letter at 1, *Community Financial* (5th Cir. No. 21-50826), Doc. 00516360618 (June 16, 2022) (quoting *Calcutt*, 37 F.4th at 293).

[16] Appellants' Responsive Rule 28(j) Letter at 2 n.1, *Community Financial* (5th Cir. No. 21-50826), Doc. 00516368486 (June 23, 2022).

The plaintiffs went on to explain that, in their view, they had "satisfied *Collins* by establishing that President Trump would have removed [CFPB] Director Cordray," so "the Court can simply assume arguendo that *Collins* applies to the relief sought here."[17]

The Fifth Circuit issued its decision in *Community Financial* approximately two weeks after Burgess filed his Complaint in this matter. The Fifth Circuit began its analysis by acknowledging, as had the District Court, that the Supreme Court had vindicated the plaintiffs' argument that Congress could not restrict the President's ability to remove the CFPB Director at will. *See Community Financial*, 51 F.4th at 631 (discussing *Seila Law*). But the panel ultimately declined to grant the plaintiffs their requested relief based on its view that they had failed to discharge their obligation to "demonstrate that the unconstitutional removal provision caused them harm." *Id.* at 632. As part of its remedial discussion, the panel stated that:

> *Collins* did not rest on a distinction between prospective and retrospective relief. As the Sixth Circuit recently explained, *Collins*'s remedial inquiry "focuse[d] on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief." *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022).

*Id.* at 631. The panel then held that summary judgment against the plaintiffs was proper because they had failed to demonstrate the type of "compensable harm" discussed in *Collins*. *Id.* at 623.

**B.    Procedural History**

On October 15, 2022, Burgess filed a motion for a preliminary injunction. With respect to Count 1, Burgess argued that he was likely to succeed on the merits of his claim that the FDIC's Board is unconstitutionally structured because a majority of its members cannot be fired at will by the President. *See* Mot. at 8-11. And with respect to Count 2, Burgess argued that he was likely

---

[17] *Id.*

to succeed on the merits of his claim that the administrative law judges used by the FDIC enjoy an unconstitutional level of protection from removal. *See id.* at 11-14.

This Court issued an Order on November 6, 2022 that granted Burgess's motion in part and denied it in part. This Court held that Burgess was "unlikely to succeed on the merits of the remedy" as to Counts 1 and 2 because, although those two claims "have merit" as a matter of constitutional law, this "Court cannot afford Plaintiff any relief as to these claims." Order at 17.

That holding was premised primarily on *Community Financial*. This Court concluded that, even when a plaintiff seeks only prospective relief, he "must demonstrate that . . . the unconstitutional removal protection inflicted harm." *Id.* at 17 (internal quotation marks omitted). This Court rejected Burgess's argument "that the *Collins* harm requirement only arises when a plaintiff is seeking retrospective relief," reasoning that, under *Community Financial*, a "plaintiff must demonstrate . . . that the unconstitutional removal provision inflicted harm" "even in cases where the plaintiff is seeking prospective relief." *Id.* at 18. The Court then concluded that Burgess "has not shown a substantial likelihood of succeeding" on Counts 1 and 2 because he "provided no evidence" that he has suffered a "harm of the kind required under *Collins*." *Id.* at 18-19.

## REASONS TO GRANT RECONSIDERATION

**I.   The Portion of *Community Financial* on Which the Order Depended Cannot Be Relied Upon Because, As Interpreted by the Order, It Conflicts with the Fifth Circuit's En Banc Decision in *Cochran*.**

The Fifth Circuit has repeatedly held that, when two of its published opinions are "in conflict," courts in this Circuit are "bound to follow . . . the earlier decision of th[e] court on the subject." *Matter of Howard*, 972 F.2d 639, 641 (5th Cir. 1992).[18]   That rule applies with special

---

[18] *Accord Latham v. Shalala*, 36 F.3d 482, 483 n.1 (5th Cir. 1994) ("Where decisions conflict, the earlier decision should be followed."); *Johnson v. Moral*, 843 F.2d 846, 846-48 (5th Cir. 1988) (noting that it is "firmly established" that, "should a later panel render a decision conflicting with that of an earlier one, it is the earlier decision which is to be followed and not the later"), *rev'd on other grounds on reh'g sub nom. Johnson v. Morel*, 876 F.2d 477 (5th Cir.

force when the earlier-in-time decision is an en banc opinion.  That is so because, when there is "any conflict between" a panel decision of the Fifth Circuit and an en banc decision of the Fifth Circuit, "the latter controls."  *Racal Survey U.S.A., Inc. v. M/V COUNT FLEET*, 231 F.3d 183, 190 n.7 (5th Cir. 2000); *accord Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 345 n.4 (5th Cir. 2014).

Thus, to the extent that the Fifth Circuit's panel decision in *Community Financial* conflicts with its en banc decision in *Cochran*, this Court would be required to follow *Cochran*.

And such a conflict clearly exists, assuming *Community Financial* is interpreted to apply to the facts of this case.  As explained above, footnote 16 of *Cochran* explicitly held that *Collins* does not "impact" the analysis in cases where the plaintiff "does not seek to 'void' the acts of any [agency] official" but simply "seeks an administrative adjudication untainted by separation-of-powers violations."  *Cochran*, 20 F.4th at 210 n.16.  Relying on this very footnote, other courts within the Fifth Circuit have recently interpreted *Cochran* in exactly the way that Burgess interprets *Collins* here.  Indeed, Burgess cannot improve on Judge Kernodle's careful analysis of this issue in his recent decision in *Consumers' Research v. Consumer Product Safety Commission*, No. 6:21-cv-256, 2022 WL 1577222 (E.D. Tex. Mar. 18, 2022), *appeal docketed* May 18, 2022 (5th Cir. No. 22-40328).  Judge Kernodle explained there that:

---

1989); *see id.* (noting that this rule "rests on the obvious premise that, since the later panel decision **should** have followed that of the first panel, the third panel coming to examine the Circuit's precedent on the point is bound by the decision of the first panel—just as, indeed, was the second panel" (emphasis altered)); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 340 n.4 (5th Cir. 1996) ("Although we acknowledge the inconsistency in our caselaw, we are bound to follow the earlier decision."); *Thrift v. Estate of Hubbard*, 44 F.3d 348, 362 n.28 (5th Cir. 1995) (collecting case law confirming that courts in the Fifth Circuit are "bound by the earliest decision . . . when [a] conflict exists"); *see also Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc) (similar).

*Collins* does not address requests for prospective relief. Instead, *Free Enterprise Fund* [*v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010) ("*PCAOB*")] governs. In that case, the Supreme Court squarely held that plaintiffs challenging removal restrictions could obtain declaratory relief **without** demonstrating the restrictions inflicted "compensable harm" or identifying a "plausible nexus" between the restrictions and the challenged action. *See* 561 U.S. at 513; *see also id.* at 491 n.2. The Court stated: "[Petitioners] are entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513. This type of equitable relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Id.* at 491 n.2 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

> **Indeed, the Fifth Circuit held in *Cochran v. SEC* that *Collins* does not apply to plaintiffs seeking prospective relief**. *See* 20 F.4th at 210 n.16 ("*Collins* does not impact our conclusion in this case because Cochran does not seek to 'void' the acts of any SEC official. Rather, she seeks an administrative adjudication untainted by separation-of-powers violations.").

*Id.* at *13 (emphasis added; internal citations omitted).[19]

*Cochran*'s holding that *Collins* does not "impact" the remedial analysis when the plaintiff "does not seek to 'void' the acts" of an agency, but seeks only prospective relief to ensure "an administrative adjudication untainted by separation-of-powers violations," 20 F.4th at 210 n.16, is clearly in conflict with *Community Financial*'s statement that "*Collins* did not rest on a distinction between prospective and retrospective relief," 51 F.4th at 631, to the extent the latter is applied to the circumstances here. Footnote 16 of *Cochran* clarifies that *Collins* applies when a plaintiff "seek[s] to 'void' the acts of an[] agency official," but does not apply when a plaintiff seeks solely the prospective relief of "an administrative adjudication untainted by separation-of-powers violations." 20 F.4th at 210 n.16. Insofar as *Community Financial* is interpreted to prescribe the

---

[19] On appeal, the *Consumers' Research* plaintiffs explained that this passage from Judge Kernodle's decision is sensible because, "[e]ven if a removal restriction did not affect an agency's **past** conduct, that would not justify permitting the agency to unconstitutionally proceed without presidential oversight in the **future**." Br. for Appellees at 47-48, *Consumers' Research v. Consumer Prod. Safety Comm'n* (5th Cir. No. 22-40328), 2022 WL 6164656 (Sept. 30, 2022) (emphasis altered); *see id.* at 48 ("This Court should decline the government's invitation to insulate unconstitutional removal restrictions from any meaningful judicial review on both the front-end and the back-end.").

opposite rule—i.e., that a "determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief," even where (unlike in *Community Financial* itself) a plaintiff does **not** seek to void any prior agency action, the cases are plainly in conflict. *Community Financial*, 51 F.4th at 631. Faced with that conflict, this Court must follow *Cochran*, the earlier-decided en banc decision.

It also bears mention that *Community Financial* may well have been decided differently if the panel had been made aware of the import of the *Cochran* decision for its remedial analysis. But *Cochran* was never cited in the *Community Financial* briefs, was not submitted to the Court via a letter pursuant to Federal Rule of Appellate Procedure 28(j), and was not discussed at argument. In this Circuit, the fact that a particular issue was not raised in the parties' briefs means that future Fifth Circuit panels (and District Courts within the Circuit) are not precluded from reaching a different result in a future case where that issue **is** presented in the briefs.[20]

In lieu of relying on *Cochran*, the *Community Financial* panel understandably resolved the case on the basis of the authorities that the parties **did** place before the Court. One of those authorities was the Sixth Circuit's then-recent decision in *Calcutt*, where a three-judge panel held that the "distinction" between prospective and retrospective remedies "does not matter" in a case challenging removability protections. 37 F.4th at 316. That portion of *Calcutt*—which was cited in the key passage of *Community Financial*—is both incorrect and irreconcilable with the Fifth Circuit's en banc decision in *Cochran*. In any event, whatever persuasive value *Calcutt* may have had when *Community Financial* was decided has since been called into grave doubt. After *Calcutt* was decided, the respondent's counsel applied to the Supreme Court for a stay and argued, among

---

[20] *See Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 229 n.15 (5th Cir. 2020); *Matter of Swift*, 129 F.3d 792, 796 n.18 (5th Cir. 1997); *Richards v. J.A. Jones Constr. Co.*, 782 F.2d 504, 508 n.3 (5th Cir. 1986); *Lirette v. N.L. Sperry Sun, Inc.*, 810 F.2d 533, 538 (5th Cir. 1987), *on reh'g en banc*, 820 F.2d 116 (5th Cir. 1987).

other things, that the Sixth Circuit's opinion had wrongly "disregarded limitations on *Collins*'s reach" by extending *Collins*'s "proof-of-prejudice requirement even to cases involving **<u>prospective</u>** relief."[21]   On September 29, 2022, the Supreme Court recalled the Sixth Circuit's mandate in *Calcutt* and stayed that decision (and the underlying FDIC order) pending disposition of the forthcoming petition for a writ of certiorari.  *Calcutt v. FDIC*, No. 22A255, 2022 WL 4546340 (U.S. Sept. 29, 2022).  The Supreme Court issues such stays only when the applicant is "likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 426 (2009); *see Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2616 (2020) (Roberts, J., concurring); *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2090 (2017) (Thomas, J., concurring in part and dissenting in part); *Merrill v. Milligan*, 142 S. Ct. 879, 883 n.1 (2022) (Kagan, J., dissenting).

The conflict between *Community Financial* and *Cochran* is not merely academic, but rather has profound consequences for tens of millions of Americans who make a living in industries that are subject to regulation by federal agencies.  From a practical standpoint, it would be inequitable to interpret *Collins* as applying across the board to requests for prospective relief, even where—as here—a plaintiff seeks nothing but forward-looking relief to ensure "an administrative adjudication untainted by separation-of-powers violations." *Cochran*, 20 F.4th at 210 n.16.[22]  Such a holding would make it virtually impossible for any plaintiff to ever receive a meaningful remedy in a lawsuit alleging a removability defect.

---

[21] Application for Stay at 25, *Calcutt v. FDIC* (No. 22A255) (Sept. 22, 2022), https://bit.ly/3VlEztw (emphasis altered).

[22] The government's brief in *Collins* acknowledged a material distinction between requests for prospective and retrospective relief.  The government argued to the Supreme Court that "equitable principles bar[red plaintiffs'] belated attempt to unravel a multibillion-dollar contract agreed to by Treasury" (a form of retrospective relief), but then noted that this rationale did "not undercut" the portion of the court of appeals' "judgment awarding a declaration that FHFA's structure violates the Constitution" (a form of prospective relief).  Reply & Resp. Br. of the United States at 28 & n.*, *Collins*, 141 S. Ct. 1761 (Nos. 19-422, 19-563), 2020 WL 6322317 (Oct. 23, 2020).

As Judge Oldham explained in his six-Judge concurrence in *Cochran*, "it will be very challenging to obtain meaningful retrospective relief for constitutional removability claims after *Collins*," because plaintiffs pursuing such claims will "need to identify a retroactively vindicable harm inflicted by the unconstitutional removal protection."   20 F.4th at 232-33 (Oldham, J., concurring).   Judge Oldham explained that plaintiffs will seldom if ever be able to demonstrate this type of "compensable harm" because "the examples hypothesized by the *Collins* Court, like a public statement that an officer would have been removed but for a removal protection, are quite uncommon occurrences."  *Id.* at 233.   Judge Oldham's concern over the difficulty of establishing a "compensable harm" was precisely the reason why he agreed with the majority that a plaintiff seeking only **prospective** relief did not need to show a "compensable harm" to succeed on a removability challenge.   Indeed, as Judge Oldham explained,

> challengers with meritorious removability claims may often be left without any remedy if they are forced to wait until after enforcement proceedings conclude [to] bring their claims . . . .  **A person subject to an unconstitutional adjudication should at least be able to sue for declaratory relief requiring a constitutionally structured proceeding.  After *Collins*, this may be the only way to provide a meaningful avenue of relief for claims like Cochran's** and check the agency's . . . tendency toward exclusive, unimpeded control over the way it investigates and proceeds against its targets.

*Id.* at 233 (emphasis added) (citations and internal quotation marks omitted).

In sum, this Court's Order relied on and applied language from *Community Financial* in a manner that that clearly conflicts with the prior en banc decision in *Cochran*.  The Order should therefore be reconsidered.  The Court should instead apply the rule announced in footnote 16 of *Cochran*, even if it believes that the interpretation of *Collins* announced in *Community Financial* is more persuasive.  *See United States v. Tompkins*, 130 F.3d 117, 121 n.13 (5th Cir. 1997) (noting that, when there is a conflict in Fifth Circuit authorities, judges should follow the earlier decision, but may elect to "note [their] concerns" about the division of authority and should feel free to

suggest that it may be prudent for the Fifth Circuit to consider the conflict by convening a future en banc proceeding).

## II.      Alternatively, This Court Can Read *Community Financial* and *Cochran* In Concert.

If possible, District Courts should avoid interpreting two Fifth Circuit cases to create a conflict or a division of authority.  *Cf. Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 296 n.3 (5th Cir. 2019) (as revised); *see also KH Outdoor, L.L.C. v. City of Trussville, Ala.*, 366 F. Supp. 2d 1141, 1145 (N.D. Ala. 2005) (discussing the need to "avoid . . . the complications created by the intra-circuit split" where possible), *aff'd*, 458 F.3d 1261 (11th Cir. 2006).  As discussed above, the interpretation of *Community Financial* offered in this Court's Order places *Community Financial* into conflict with *Cochran*.  Rather than adopt that broad reading of *Community Financial*, this Court could reconcile the Fifth Circuit's precedents by granting reconsideration and holding in a new Order that either (1) *Community Financial* simply does not answer the question presented in this case, *see infra* Section II.A; or (2) that the relevant portion of *Community Financial* contains non-binding dicta that need not be followed, *see infra* Section II.B.

### A.      *Community Financial* Has No Applicability When, As Here, a Plaintiff Pressing a Removability Argument Seeks Prospective Relief <u>Only</u>.

The easiest way for this Court to reconcile *Community Financial* and *Cochran* would be to hold that the discussion of remedies in *Community Financial* does not constitute binding precedent with respect to the particular fact pattern presented in this case—i.e., a situation in which the plaintiff seeks **<u>only</u>** prospective relief and does not request vacatur of any agency action.

The plaintiffs' lead argument in *Community Financial* was that the CFPB's Payday Lending Rule should be vacated because it was promulgated at a time when the agency's Director enjoyed an unconstitutional level of protection from removal.  To the extent the plaintiffs sought prospective relief at all, that relief was limited to a request for an injunction that would block the

19

agency from enforcing the rule on a going-forward basis due to the removability problem.  *See supra* notes 6-7 and accompanying text.  Phrased differently, the plaintiffs' request for prospective relief, to the extent there was one, was merely a "request[ for] an injunction against the future enforcement of" surviving portions of the Payday Lending Rule.  *See supra* note 11.

The critical difference between *Community Financial* and this case is that, in *Community Financial*, the plaintiffs' request for prospective relief would, by their own admission, stand or fall based on whether the Payday Lending Rule was vacated.  The *Community Financial* plaintiffs never argued that they would have any entitlement to prospective relief if the Rule was not retrospectively vacated; instead, the entirety of their case rested on the notion that the agency should be blocked from enforcing the Rule on a going-forward basis because it was unlawful when promulgated.  *See supra* note 14 (discussing plaintiffs' argument that they were "entitle[d] . . . to prospective relief" because the CFPB "lacked authority to promulgate the Rule because its director at the time was unconstitutionally insulated from removal").  In other words, whether or not the *Community Financial* plaintiffs' requested relief was conceptualized as "prospective" or "retrospective," they clearly sought to deprive a prior agency action of legal force—to render it null and void.  By contrast, Burgess has not asked this Court to vacate or set aside any prior action of the FDIC, and his entitlement to prospective relief does not depend on this Court doing so.  Instead, Burgess's argument is that—regardless of what may have happened in the Enforcement Proceeding up to this point—the Defendants should be enjoined from **<u>continuing</u>** that proceeding, including issuing **<u>future</u>** orders in that proceeding, unless and until the removability defects are cured.  That requested relief is totally unlike the relief sought in *Community Financial*.

From the perspective of the relief sought, this case—unlike *Collins* and *Community Financial*—is no different from *PCAOB*, where the Supreme Court held that plaintiffs challenging

removability restrictions for officers of the United States were entitled to declaratory relief, and did not require the plaintiffs to show any form of compensable harm.  561 U.S. at 491 n.2, 513. The Supreme Court explained that the separation-of-powers violation in that case "create[d] a 'here-and-now' injury" and that the plaintiffs were therefore "entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513 (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)); *see Cochran*, 20 F.4th at 233 (Oldham, J., concurring).  As explained below, the Fifth Circuit confirmed that rule in its en banc decision in *Cochran*, which held that a plaintiff does not need to show a "compensable harm" when he or she "does not seek to 'void' the acts of any SEC official" but rather "seeks an administrative adjudication untainted by separation-of-powers violations." *Id.* at 210 n.16 (majority).

Against the backdrop of *PCAOB* and *Cochran*, *Community Financial* should be read as limited to the specific and idiosyncratic facts at issue there.  To the extent the *Community Financial* plaintiffs pursued a request for prospective relief, that request was tied entirely to their request that the Rule be vacated; simply stated, the *Community Financial* plaintiffs were attacking a **prior agency action** and seeking to deprive it of legal force.  *Community Financial* indicated that, in those circumstances, the plaintiff would not be relieved of the obligation to show "compensable harm," because the request for prospective relief was illusory and entirely dependent on the vacatur of the rule.  Of course, the natural consequence of vacating an administrative rule is that it cannot be enforced on a going-forward basis because the Court's decision means that the world must act as if the rule had never existed at all.  *Cf. Geiger v. Allen*, 850 F.2d 330, 332 (7th Cir. 1988) (noting that the "legal status" of a vacated order "is the same as if the order had never existed" (internal quotation marks omitted)); *Wynne v. Rochelle*, 385 F.2d 789, 796 (5th Cir. 1967) (similar).  There

21

is no difference between (a) requesting that a rule be vacated and (b) requesting that a rule be vacated and enjoined on a going-forward basis, because all of the relief requested by (b) is already inherent in the relief requested by (a).

Thus, to the extent *Community Financial* can be understood as delivering any holding on this issue, that holding is best understood as a determination that a plaintiff cannot "dress up" a request for retrospective relief as a request for prospective relief to avoid the requirement to show "compensable harm."  Otherwise, *Collins*'s remedial analysis would be a dead letter.

In short, *Community Financial* and *Collins* are both cases that discuss what remedial standard should apply **when a plaintiff is seeking vacatur of an agency action**.  That is not what Burgess is asking for here, and ergo those cases do not control.  *Community Financial* had no occasion to consider whether a plaintiff would be required to show a "compensable harm" in a case where, as here, the plaintiff requests **only** prospective relief, and nothing about the plaintiff's entitlement to prospective relief depends in any way on whether retrospective relief is also warranted.  Any broader interpretation of *Community Financial*—such as the one offered in this Court's prior Order—would make that case irreconcilable with the en banc decision in *Cochran*.

### B.       The Portion of *Community Financial* on Which the Order Relied Was Dicta.

The briefs in *Community Financial* focused on the question of whether the Payday Lending Rule should be vacated, which is a form of retrospective relief.  After briefing in *Community Financial* was complete, the parties filed competing Rule 28(j) letters concerning the import of the Sixth Circuit's recent decision in *Calcutt*.  As noted above, the plaintiffs' letter expressly stated that, notwithstanding the arguments they had previously presented to the District Court and in their appellate briefs, "th[e] Court need not resolve whether *Collins* applies to prospective relief."  *See supra* note 16.  The plaintiffs insisted in their letter that they had "satisfied *Collins* by establishing that President Trump would have removed Director Cordray," meaning that the Court could

"simply assume arguendo that *Collins* applies to the relief sought here." *See supra* note 17. The government interpreted the plaintiff's invitation to "assume . . . that *Collins* applies to relief sought" as a concession that the *Community Financial* panel should apply the *Collins* framework to plaintiffs' entire case, including any request for prospective relief that they might be making. Indeed, at the Fifth Circuit oral argument, the CFPB's attorney rightly noted that the government "underst[ood the plaintiffs] to now essentially concede that the *Collins* framework governs."[23]

The *Community Financial* panel nonetheless went on to hold that "*Collins* did not rest on a distinction between prospective and retrospective relief." 51 F.4th at 631. But given that the plaintiffs had forfeited any contrary argument by affirmatively inviting the panel to "assume . . . that *Collins* applies to the relief sought here," that portion of the *Community Financial* opinion was dicta. In effect, the plaintiffs' 28(j) letter operated as a forfeiture of their argument that *Collins* did not apply to requests for prospective relief. And it is black-letter law that a federal court's comments on forfeited issues constitute mere dicta.[24] Courts in this Circuit need not follow dicta in the Fifth Circuit's opinions. *See Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000); *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 463 n.11 (1993). At the very least, the *Community Financial* plaintiffs' invitation for the court to "**assume** . . . that *Collins* applies to the relief sought here" means that the Fifth Circuit's acceptance of that invitation does not constitute binding precedent. The Fifth Circuit recently explained that a prior "panel's **assumption** is not binding" when, as here, "the adverse party did not challenge . . . that issue." *Ochoa-Salgado v. Garland*, 5 F.4th 615, 619-20 (5th Cir. 2021) (emphasis added).

---

[23] Tr. of *Community Financial* Oral Argument at 16:12-16:19 (May 9, 2022), https://bit.ly/3X8SzbC.

[24] *See, e.g.*, *United States v. Wilson*, 776 F.3d 402, 405 (6th Cir. 2015) (analysis of substantive legal issue in prior case "was dicta because [the appellant] forfeited the issue on appeal"); *Howell Petroleum Corp. v. Samson Res. Co.*, 903 F.2d 778, 781 (10th Cir. 1990) (statement in prior opinion was "dicta because the issue had been waived and was not before the court"); *United States v. Smith*, 386 F.3d 753, 761 (6th Cir. 2004) (similar); *Bass v. Butler*, 116 F. App'x 376, 383 (3d Cir. 2004) (similar).

\*        \*        \*        \*        \*

Under *Cochran*, there is no requirement for Burgess to present evidence that the unconstitutional removal protections in place at the FDIC have caused him a "compensable harm." Burgess can instead demonstrate an entitlement to a preliminary injunction on Counts 1 and 2 by showing that he is likely to succeed on the merits, that he faces a risk of irreparable harm, and that the equities favor an injunction. This Court has already concluded that all three of those requirements are satisfied here. *See* Order at 17 (noting that the constitutional claims presented in Counts 1 and 2 "have merit"); *see id.* at 22-23 (concluding that Burgess has shown irreparable harm and that the equities favor an injunction). Burgess therefore respectfully requests that this Court grant this motion for reconsideration and enter a new Order that grants preliminary injunctive relief as to the removability defects discussed in Counts 1 and 2.[25]

---

[25] On December 1, 2022, this Court entered a preliminary injunction with respect to Count 3. ECF No. 49 at 3-4. The Defendants noticed an appeal the following day. *See* ECF No. 50. In the unlikely event that the government's appeal is successful, the existing injunction would be lifted, and the FDIC would then be free to continue the Enforcement Proceeding unless blocked from doing so on some other ground. Issuing a preliminary injunction as to Counts 1 and 2 is therefore necessary to ensure that the FDIC does not issue a Final Decision in the Enforcement Proceeding in the event that the Fifth Circuit were to vacate this Court's determination that an injunction is warranted as to Count 3. Burgess respectfully submits that the proper course of action would be for this Court to enter an Order that (1) grants reconsideration as to Counts 1 and 2 for the reasons explained above and (2) calls for supplemental briefing on the scope and contours of a future preliminary injunction as to Counts 1 and 2, just as this Court previously did after finding that Burgess was entitled to a preliminary injunction as to Count 3. *See* Order at 24.

## <u>CONCLUSION</u>

**WHEREFORE**, this Court should grant reconsideration and enter a preliminary injunction as to Counts 1 and 2 in the Complaint.

Dated:  December 2, 2022

Respectfully submitted,

*/s/ Manuel G. Berrelez*

Manuel G. Berrelez (TX Bar No. 24057760)
   Email: mberrelez@velaw.com
Thomas P. Mitsch (TX Bar No. 24102218)
   Email: tmitsch@velaw.com
James F. Hopper (TX Bar No. 24116535)
   Email: jhopper@velaw.com
Madelyn C. Stanley (TX Bar No. 24121529)
   Email: mstanley@velaw.com

James T. Dawson (TX Bar No. 24094618)
  *Pro Hac Vice* (DC Bar No. 1602502)
   Email: jamesdawson@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6588
Facsimile: (202) 639-6604

VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716

*Counsel for Plaintiff Cornelius Campbell Burgess*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of December, 2022, I caused the foregoing document to be filed with the Clerk of the U.S. District Court for the Northern District of Texas via the Court's CM/ECF system, which will cause notification of such filing to be sent to all counsel and parties of record registered to receive such notices.

Dated:  December 2, 2022          Respectfully submitted,

                        */s/ Manuel G. Berrelez*

                        Manuel G. Berrelez (TX Bar No. 24057760)
                          Email: mberrelez@velaw.com
                        VINSON & ELKINS LLP
                        Trammell Crow Center
                        2001 Ross Avenue, Suite 3900
                        Dallas, Texas 75201
                        Telephone: (214) 220-7700
                        Facsimile: (214) 220-7716

                        *Counsel for Plaintiff Cornelius Campbell Burgess*

26

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the applicable type-volume limitation because it contains no more than 25 pages, which was the length limit set in Civil Rule 7.2(c).

Dated:  December 2, 2022

Respectfully submitted,

*/s/ Manuel G. Berrelez*

Manuel G. Berrelez (TX Bar No. 24057760)
 Email: mberrelez@velaw.com
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716

*Counsel for Plaintiff Cornelius Campbell Burgess*

27