# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### - WICHITA FALLS DIVISION -

|  |  |
|---|---|
| **CORNELIUS CAMPBELL BURGESS**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL DEPOSIT INSURANCE CORPORATION, et al.**, <br><br> Defendants. | **CIVIL NO. 7:22-cv-00100-O** <br><br> The Honorable Reed O'Connor, <br> United States District Judge |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew J. Dober
Senior Counsel

 /s/ Andrew A. Nicely
Andrew A. Nicely (Va. No. 41750)
Daniel Kurtenbach
3501 Fairfax Drive, D-7028
Arlington, VA 22226-3500
Tel.: (703) 516-5729
Fax: (703) 562-2477
Email: anicely@fdic.gov

Bryce C. Quine (Tex. No. 24032976)
Arthur E. Anthony (Tex. No. 24001661)
600 North Pearl Street, Suite 700
Dallas, Texas 75201
Telephone: (972) 761-8520
Alternate Tel.: (972) 761-2237
Email: bquine@fdic.gov
Email: aranthony@fdic.gov

*Counsel for Defendants*

DATED: January 3, 2023

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

    A.    The FDIC .............................................................................................. 2

    B.    FDIC Enforcement Actions and Judicial Review Thereof ..................... 4

    C.    The Burgess Enforcement Action ........................................................ 5

APPLICABLE LEGAL STANDARDS ................................................................ 7

    A.    Federal Rule of Civil Procedure 12(b)(1) ............................................. 7

    B.    Federal Rule of Civil Procedure 12(b)(6) ............................................. 8

ARGUMENT ...................................................................................................... 8

    I.    SECTION 1818(i)(1) DIVESTS THIS COURT OF SUBJECT MATTER JURISDICTION TO ENTERTAIN PLAINTIFF'S LAWSUIT. .......................... 9

        A.    The Divestiture of Jurisdiction is Explicit .................................. 9

        B.    The *Thunder Basin* Factors Confirm That This Court Lacks Jurisdiction .............................................................................. 15

    II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED WITH PREJUDICE UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1). ..................................................................... 19

    III.    IF PLAINTIFF'S CLAIMS ARE NOT TIME BARRED THEY ARE NOT RIPE. ....................................................................................23

    IV.    ALL OF PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE FORECLOSED BY THE MANDATE RULE. ...........................................................25

    V.    PLAINTIFF'S REMOVABILITY CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE, AS THE COURT ALREADY RECOGNIZED, THE  CLAIMS LACK MERIT. ............................................ 29

        A.    Count I Fails To State A Claim ................................................. 29

        B.    Count II Fails To State A Claim. .............................................. 35

    VI.    PLAINTIFF'S SEVENTH AMENDMENT CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE IT IS FORECLOSED BY CONTROLLING PRECEDENT AND OTHERWISE WITHOUT MERIT. ..................................................................................... 35

VII.     ALL CLAIMS AGAINST DEFENDANT WHANG, THE ADMINISTRATIVE
         LAW JUDGE, SHOULD BE DISMISSED BECAUSE SHE HAS NO
         ONGOING ROLE IN THE ADMINISTRATIVE ENFORCEMENT
         PROCEEDING. .................................................................................................. 36

CONCLUSION ........................................................................................................................ 37

CERTIFICATE OF SERVICE ................................................................................................. 38

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Akin v. Office of Thrift Supervision,*
   950 F.2d 1180 (5th Cir. 1992) ................................................................... 22

*Ali v. Fed. Bureau of Prisons,*
   552 U.S. 214 (2008) ................................................................................... 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................... 8

*Auction Co. of Am. v. FDIC,*
   132 F.3d 746 (D.C. Cir. 1997) ................................................................... 19

*Auction Co. of Am. v. FDIC,*
   141 F.3d 1198 (D.C. Cir. 1998) ................................................................. 19

*Bank of Louisiana v. FDIC,*
   919 F.3d 916 (5th Cir. 2019) ............................................................. *passim*

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.,*
   522 U.S. 192 (1997) ................................................................................... 23

*Bd. of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.,*
   29 F.3d 993 (5th Cir. 1994) ............................................................. 10-11, 13

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.,*
   502 U.S. 32 (1991) ..................................................................... 9, 10, 12, 13

*Bebo v. SEC,*
   799 F.3d 765 (7th Cir. 2015) ..................................................................... 16

*BedRoc Ltd. v. United States,*
   541 U.S. 176 (2004) ................................................................................... 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................... 8

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands,*
   461 U.S. 273 (1983) ................................................................................... 20

*Burgess v. FDIC,*
   871 F.3d 297 (5th Cir. 2017) ..................................................................... 21

*Calcutt v. FDIC*,
    37 F.4th 293 (6th Cir. 2022) ............................................................................ 28, 29

*CFPB v. CashCall, Inc.*,
    35 F.4th 734 (9th Cir. 2022) ................................................................................. 28

*Cmty. Fin. Servs. Ass'n v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) ........................................................................ 27, 28, 29

*Cochran v. SEC*,
    No. 4:19-cv-066-A, 2019 WL 1359252 (N.D. Tex. Mar. 25, 2019) ........................ 25

*Cochran v. Sec. & Exch. Comm'n*,
    20 F.4th 194 (5th Cir. 2021) ......................................................................... *passim*

*Collins v. Lew*,
    No. 4:16-CV-03113, 2022 WL 17170955 (S.D. Tex. Nov. 22, 2022),
    *appeal docketed*, No. 22-20632 (5th Cir. Dec. 8, 2022) ..................................... 27

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) ............................................................................. 26, 27, 30

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ............................................................................................ 12

*Crane v. Beers*,
    No. 3:12-cv-3247-O, 2013 WL 12123944 (N.D. Tex. Dec. 9, 2013) ...................... 13

*Crane v. Johnson*,
    783 F.3d 244 (5th Cir. 2015) ............................................................................... 13

*Cross v. Lucius*,
    713 F.2d 153 (5th Cir. 1983) ............................................................................... 19

*Davis v. Mass. Mut. Life Ins. Co.*,
    69 F.2d 16 (5th Cir. 1934) .................................................................................. 33

*Doe v. United States*,
    853 F.3d 792 (5th Cir. 2017, revised Apr. 12, 2017) ....................................... 20, 21

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ............................................................................................... 15

*Energy Transfer Partners, L.P. v. FERC*,
    567 F.3d 134 (5th Cir. 2009) ............................................................................... 24

*Fahey v. Mallonee,*
    332 U.S. 245 (1947) ............................................................................................... 3

*Farias v. Bexar Cty. Bd. of Trustees,*
    925 F.2d 866 (5th Cir. 1991) ................................................................................ 17

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
    458 U.S. 141 (1982) ............................................................................................... 3

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ............................................................................................. 31

*Gen. Land Office v. U.S. Dep't of Interior,*
    947 F.3d 309 (5th Cir. 2020) ................................................................................ 19

*Groos Nat'l Bank v. Comptroller of Currency,*
    573 F.2d 889 (5th Cir. 1978) ................................................................................ 11

*Hair v. United States,*
    350 F.3d 1253 (Fed. Cir. 2003) ............................................................................ 20

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    139 S. Ct. 524 (2019) ........................................................................................... 14

*Herr v. U.S. Forest Serv.,*
    803 F.3d 809 (6th Cir. 2015) ................................................................................ 20

*Higdon v. Hensley,*
    49 F.3d 728 (5th Cir. 1995) (No. 94-20066), 1995 WL 103357 ............................ 19

*Honig v. Doe,*
    484 U.S. 305, (1988) ............................................................................................ 14

*Horvath v. Dodaro,*
    160 F. Supp. 3d 32 (D.D.C. 2015) .................................................................. 20, 22

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ............................................................................................. 30

*Integrity Advance, LLC v. CFPB,*
    48 F.4th 1161 (10th Cir. 2022) ............................................................................ 28

*Jarkesy v. SEC,*
    48 F. Supp. 3d 32 (D.D.C. 2014) ......................................................................... 18

*Jarkesy v. SEC*,
    803 F.3d 9 (D.C. Cir. 2015) ................................................................. 18

*Jarkesy v. Securities & Exchange Commission*,
    34 F.4th 446 (5th Cir. 2022) ........................................................... 31, 32

*Landmark Land Co. v. Office of Thrift Supervision*,
    948 F.2d 910 (5th Cir. 1991) ............................................................... 11

*McBride v. Foti*,
    59 F.3d 1243 (5th Cir. 1995) (No. 94-30567), 1995 WL 413048 ............................................ 33

*Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*,
    855 F.3d 573 (4th Cir. 2017) ............................................................... 19

*Michael v. FDIC*,
    687 F.3d 337 (7th Cir. 2012) ................................................................. 5

*Mohamad v. Palestinian Auth.*,
    566 U.S. 449 (2012) ......................................................................... 13

*Moran v. Kingdom of Saudi Arabia*,
    27 F.3d 169 (5th Cir. 1994) .................................................................. 7

*Morrison v. Olson*,
    487 U.S. 654 (1988) ......................................................................... 30

*Neighbors of Casino San Pablo v. Salazar*,
    442 F. App'x 579 (D.C. Cir. 2011) .......................................................... 20

*Neitzke v. Williams*,
    490 U.S. 319 (1989) .......................................................................... 8

*Orff v. United States*,
    545 U.S. 596 (2005) ......................................................................... 33

*Orix Credit All., Inc. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ............................................................... 23

*Paul v. Office of Thrift Supervision*,
    763 F. Supp. 568 (S.D. Fla. 1990) .......................................................... 22

*Paul v. Ryan*,
    948 F.2d 1297 (11th Cir. 1991) ............................................................. 22

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ................................................................................ 7

*Ratzlaf v. United States*,
  510 U.S. 135 (1994) ........................................................................................... 13

*Reiter v. Cooper*,
  507 U.S. 258 (1993) ........................................................................................... 23

*Rhoades v. Casey*,
  196 F.3d 592 (5th Cir. 1999) ......................................................................... 10, 12

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989) ........................................................................................... 31

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  140 S. Ct. 2183 (2020) ........................................................................... 26, 29, 30

*Shockley v. Univ. of Texas Med. Branch*,
  No. 3:06-CV-0223-K, 2008 WL 2223072 (N.D. Tex. May 15, 2008) ..................... 33

*Smith v. JPMorgan Chase Bank, Nat'l Ass'n*,
  825 F. Supp. 2d 859 (S.D. Tex. 2011) ................................................................. 19

*Smith v. JPMorgan Chase Bank Nat'l Ass'n*,
  No. C-11-260, 2012 WL 43627 (S.D. Tex. Jan. 9, 2012) ...................................... 19

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ............................................................................ 26

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ..................................................................................... 15, 16

*TOTAL Gas & Power N. Am. v. Fed. Energy Regulatory Comm'n*,
  859 F.3d 325 (5th Cir. 2017, revised July 10, 2017) ...................................... 23, 24

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ............................................................................................. 23

*United States v. Clintwood Elkhorn Mining Co.*,
  553 U.S. 1 (2008) ............................................................................................... 20

*United States v. Kubrick*,
  444 U.S. 111 (1979) ........................................................................................... 19

*United States v. Perkins*,
   116 U.S. 483 (1886) ................................................................................................... 29

*United States v. Phila. Nat'l Bank*,
   374 U.S. 321 (1963) ..................................................................................................... 3

*Wallace v. Kato*,
   549 U.S. 384 (2007) ................................................................................................... 20

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ....................................................................................... 7

*Worthington v. Office of Nat'l Drug Control Policy*,
   No. 19-0081, 2020 WL 1509167 (D.D.C. Mar. 30, 2020) ......................................... 20

*Worthington v. Office of Nat'l Drug Control Policy*,
   No. 20-5113, 2020 WL 9311952 (D.C. Cir. Nov. 12, 2020) ...................................... 20

**Statutes**

5 U.S.C. § 705 ............................................................................................................... 5

5 U.S.C. § 706 ............................................................................................................... 5

5 U.S.C. § 706(2)(B) ................................................................................................. 5, 16

5 U.S.C. § 1202(d) ....................................................................................................... 31

5 U.S.C. § 7521(a) ....................................................................................................... 31

12 U.S.C. § 1811 ............................................................................................................ 2

12 U.S.C. § 1812(a)(1) ................................................................................................. 26

12 U.S.C. § 1812(a)(2) ................................................................................................. 26

12 U.S.C. § 1812(b)(1) ................................................................................................. 26

12 U.S.C. § 1812(c)(1) ................................................................................................. 26

12 U.S.C. § 1812(c)(3) ................................................................................................. 26

12 U.S.C. § 1813(q) ....................................................................................................... 3

12 U.S.C. § 1817 ............................................................................................................ 3

12 U.S.C. § 1817(a) ....................................................................................................... 3

12 U.S.C. § 1818 ............................................................................................................ 9

12 U.S.C. § 1818(a)(1) ................................................................................................... 8

12 U.S.C. § 1818(b) ....................................................................................................... 4

12 U.S.C. § 1818(b)(1) ................................................................................................ 4

12 U.S.C. § 1818(c) ..................................................................................................... 4

12 U.S.C. § 1818(c)(2) ................................................................................................ 9

12 U.S.C. § 1818(e) ..................................................................................................... 4

12 U.S.C. § 1818(h)(1) ................................................................................................ 4

12 U.S.C. § 1818(h)(2) ....................................................................................... 5, 9, 16

12 U.S.C. § 1818(i) .............................................................................................. *passim*

12 U.S.C. § 1818(i)(1) ......................................................................................... *passim*

12 U.S.C. § 1819 ..................................................................................................... 2, 3

12 U.S.C. § 1820(b) ..................................................................................................... 3

12 U.S.C. § 1820(d) ..................................................................................................... 3

12 U.S.C. § 1821 .......................................................................................................... 3

12 U.S.C. § 1821(a)(1)(E) ............................................................................................ 3

12 U.S.C. § 1821(a)(4)(D) ........................................................................................... 3

12 U.S.C. § 1831o ...................................................................................................... 10

12 U.S.C. § 1831p-1 ................................................................................................... 10

28 U.S.C. § 2201 ........................................................................................................ 22

28 U.S.C. § 2401(a) ...................................................................................... 2, 19, 20, 22

Administrative Procedure Act,
    5 U.S.C. §§ 701-706 .......................................................................................... 4

Financial Institutions Supervisory Act of 1966,
    Pub. L. No. 89-695, 80 Stat. 1028 ...................................................................... 9

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183 ..................................................................... 2

**Regulations**

12 C.F.R. Part 308 ....................................................................................................... 4

12 C.F.R. § 308.17 ....................................................................................................... 4

12 C.F.R. § 308.38 ....................................................................................................... 4

12 C.F.R. § 308.39 ....................................................................................................... 4

12 C.F.R. § 308.40 ....................................................................................................... 4

12 C.F.R. § 308.41 ....................................................................................................... 5

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 8

Fed. R. Civ. P. 12(b)(1) ........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................ *passim*

Fed. R. Civ. P. 19(a) ................................................................................................... 33

**Other Authorities**

1 K. Davis, ADMINISTRATIVE LAW TREATISE § 4.04 (1958) ........................................ 3

BLACK'S LAW DICTIONARY (5th ed. 1979) ................................................................ 33

Recommended Decision, In the Matter of Cornelius Campbell Burgess,
Docket Nos. FDIC-14-0307e; FDIC-14-0308k (Sept. 16, 2022),
https://www.ofia.gov/decisions/2022-09-16-fdic-14-0307e.pdf. .................................. 6

S. Rep. No. 89-1482 (1966) ...................................................................................... 13

Defendants, the Federal Deposit Insurance Corporation ("FDIC"), Martin J. Gruenberg, Michael J. Hsu, Rohit Chopra, and Jennifer Whang, respectfully move the Court to dismiss the complaint of plaintiff Cornelius Campbell Burgess pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court lacks subject matter jurisdiction over the underlying controversy and Burgess has not stated a claim upon which relief could be granted. Accordingly, the complaint should be dismissed.

**INTRODUCTION**

This lawsuit is, on its face, a collateral attack on an ongoing administrative enforcement action brought by the FDIC against plaintiff, a bank director and former officer. Plaintiff contends that the FDIC's administrative law judges and its board of directors are unconstitutionally protected from removal by the President and that the administrative enforcement process unconstitutionally deprives plaintiff of his right to a jury trial. Although plaintiff raises only questions of constitutional law, and seeks only injunctive and declaratory relief, the complaint demands that a jury be empaneled to resolve these claims. In other words, plaintiff contends that a federal jury should determine whether the Seventh Amendment entitles plaintiff to have a federal jury preside over FDIC enforcement actions.

There are no factual questions for a jury to resolve here. Nor are there any questions of law for the Court to resolve. The statute governing FDIC enforcement actions expressly and unambiguously mandates that "no court"—including this Court—"shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of *any* notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1818(i)(1) (emphasis added). The relief that plaintiff seeks in his Complaint—an injunction and a declaratory judgment from a district court—are precisely the sorts of judicial intervention that

Congress prohibited in Section 1818(i)(1).  This Court also lacks jurisdiction because, under his own theory, plaintiff filed this suit more than eight years after his purported causes of action first accrued.  The statute of limitations for commencing a declaratory judgment action against a federal agency (or its officers acting in their official capacity) is six years.  28 U.S.C. § 2401(a).[1]  In short, the Court lacks subject matter jurisdiction over this case, and it should be dismissed under Rule 12(b)(1).

Even if this Court had discretion to disregard the plain language of Section 1818(i)(1)—certainly, nothing in the statute nor in any other statute confers such discretion—the complaint nevertheless would be subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief could be granted.   The enforcement proceeding is on remand from the Fifth Circuit and Burgess forfeited the right to pursue his constitutional challenges by not raising them in his initial appeal.  Moreover, the Seventh Amendment does not apply to enforcement actions brought by federal bank regulators.  So held the Fifth Circuit and every other court that has considered the question.   Furthermore, as this Court already determined, there is no merit to plaintiff's removability claims regarding the FDIC administrative law judges and the FDIC board members.  Accordingly, plaintiff has failed to state a claim, and his lawsuit would be subject to dismissal under Rule 12(b)(6) if jurisdiction existed.

## BACKGROUND

### A.     The FDIC

Congress established the FDIC in 1933, in response to an epidemic of bank closures to restore confidence in the nation's banking system by creating a system of deposit insurance.  *See* 12 U.S.C. §§ 1811, 1819.  Subsequent legislation expanded the FDIC's role in regulating and

---

[1] As explained *infra,* section 2401(a) is jurisdictional in the Fifth Circuit but even if it were not, dismissal would be warranted under Federal Rule of Civil Procedure 12(b)(6).

stabilizing banks. *See, e.g.*, Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183. The FDIC serves, among other things, as a regulator for certain state-chartered banks, including Herring Bank. *See* 12 U.S.C. §§ 1817(a), 1819, 1820(b). In that capacity, the FDIC assesses the financial condition and operations of its regulated insured depository institutions, conducting examinations and preparing examination reports. *See* 12 U.S.C. §§ 1817, 1820(b), (d). The FDIC also maintains and administers the Deposit Insurance Fund, *see id.*, 12 U.S.C. § 1821, and collects insurance premiums for this fund from insured institutions. *Id.* § 1821(a)(4)(D).

As the Supreme Court observed in 1947, "[b]anking is one of the longest regulated and most closely supervised of public callings."[2] There is good reason for this oversight; deposits in United States banks are approximately $17 trillion and the FDIC insures each qualifying account up to a maximum of $250,000.[3] The FDIC is one of three primary bank regulatory agencies, along with the Office of the Comptroller of the Currency ("OCC") and the Board of Governors of the Federal Reserve System, and it is the primary supervisor of state-chartered banks that are not members of the Federal Reserve, such as Herring Bank.[4] The FDIC also determines which banking institutions

---

[2]  *Fahey v. Mallonee*, 332 U.S. 245, 250 (1947) (addressing the regulation of national banks); *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 145 (1982) (stating that a federal savings and loans association is regulated "from its cradle to its corporate grave" (citation omitted)); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 329 (1963) (considering wide array of supervisory tools available to bank regulators, the "frequent and intensive" nature of the examination process, and finding that "the agencies maintain virtually a day-to-day surveillance of the American banking system."); 1 K. Davis, Administrative Law Treatise, § 4.04 at 247 (1958) ("The regulation of banking may be more intensive than the regulation of any other industry.").

[3]  12 U.S.C. § 1821(a)(1)(E); https://fdic.gov/about/learn/symbol/.

[4]  The OCC supervises nationally-chartered banks, and the Federal Reserve supervises bank holding companies and state-chartered banks that are members of the Federal Reserve. *See* 12 U.S.C. § 1813(q). The FDIC serves as backup regulator for insured depository institutions overseen by the OCC and the Federal Reserve.

are entitled to deposit insurance and regulates institutions in accordance with its governing statute, the Federal Deposit Insurance Act ("FDI Act").

### B.      FDIC Enforcement Actions and Judicial Review Thereof

The FDIC, pursuant to Section 8 of the FDI Act, can bring enforcement actions – commonly referred to as Section 8 proceedings – against institutions and affiliated parties that engage in unsafe and unsound practices or that violate banking laws or regulations.  *See, e.g.*, 12 U.S.C. § 1818(b) (cease-and-desist proceedings); § 1818(c) (temporary cease-and-desist orders); § 1818(e) (removal and prohibition authority); and § 1818(i) (civil money penalties).  If it becomes necessary to initiate a Section 8 proceeding, the FDIC issues a Notice of Charges setting out the facts that constitute the alleged violation or the unsafe or unsound practice.  *See id*. § 1818(b)(1).  The case is then assigned to an Administrative Law Judge ("ALJ") who conducts the proceedings pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the FDIC's corresponding Rules of Practice and Procedure, 12 C.F.R. Part 308.  Under the FDIC's Rules, the ALJ has all powers necessary to conduct a proceeding in accordance with the provisions of the APA.  This includes handling scheduling, issuing subpoenas, overseeing discovery, ruling on certain procedural matters, and receiving and ruling on the admissibility of documentary and testimonial evidence.

Within 45 days after the expiration of time allowed for the filing of post-hearing submissions, the ALJ must issue a recommended decision and then file with the FDIC's Executive Secretary the complete administrative record of the proceeding including recommended findings of fact, recommended conclusions of law, and proposed order.  *See* FDIC Rule 308.38; 12 C.F.R. § 308.38.  Under FDIC Rule 308.39, the parties may file exceptions to the ALJ's recommended decision within 30 days after the decision is issued.  12 C.F.R. § 308.39.  After the deadline passes for filing exceptions and the record is complete, the case is transmitted to the Board for final decision.  The Board then has 90 days to issue a final agency decision.  *See* 12 U.S.C. § 1818(h)(1);

12 C.F.R. § 308.40.  FDIC adjudicatory proceedings continue during the pendency of any collateral

attack in district court.  *See* 12 C.F.R. § 308.17.

     Once the Board issues its final decision, the respondent may, within 30 days, file a petition

for review of the Board's final decision in either the U.S. Court of Appeals for the District of

Columbia Circuit or the U.S. Court of Appeals for the circuit where the bank's home office is

located.  *See* 12 U.S.C. § 1818(h)(2).  The FDIC Board may elect to stay any order it issues pending

judicial review.  *See* 12 C.F.R. § 308.41. The court of appeals reviews the Board's final decision

pursuant to the APA.  *See* 12 U.S.C. § 1818(h)(2) (mandating that review of FDIC Board decisions

on enforcement actions "shall be had as provided in chapter 7 of Title 5 [of the APA]"); *accord*

*Michael v. FDIC*, 687 F.3d 337, 348 (7th Cir. 2012) (recognizing that "[t]he Administrative

Procedure Act, 5 U.S.C. § 706, governs our review [of an FDIC Board decision].").  The APA

confers on the "reviewing court" the power to set aside agency action "contrary to constitutional

right, power, privilege, or immunity[.]"  5 U.S.C. § 706(2)(B).  The reviewing court may stay the

effective date of agency action pending its review.  *See* 5 U.S.C. § 705.

### C.     The Burgess Enforcement Action

"Burgess served as the Chief Executive Officer of Herring Bank from 2000 to 2012," Cmplt.

¶ 2, Dkt. 1, he currently serves as Vice Chairman on the Bank's board of directors, *id.* ¶ 17, and he

also serves as Vice Chairman and President of the Bank's holding company, *id.*[5]  In 2014, the FDIC

---

[5]   Although the Complaint alleges that Burgess lives "in this district," it does not state where in
this district he resides.  Cmplt. ¶ 17.  He lives in Amarillo, Texas.  Although the Bank is not a party
to this lawsuit, it is headquartered in Amarillo.  Burgess nevertheless claims that venue is proper
in the Wichita Falls Division because "a substantial part of the events or omissions giving rise to
the claim occurred" in the Wichita Falls Division.  *Id.* ¶ 16 (citation omitted).  At no point does
Burgess explain what events or omissions occurred in Wichita Falls, nor can he.  After all, this
case purportedly raises "exogenous structural constitutional claims" that are "wholly collateral" to
the substantive issues in the enforcement action and that instead implicate the structure and
enforcement procedures of the FDIC, which is headquartered in Washington, DC.

initiated an enforcement proceeding against Burgess alleging that he used the Bank's cash, debit and credit cards for personal expenses for himself and his girlfriend and attempted to appropriate dividends for bank stock he knowingly kept off the Bank's books. *See* Petition for Review, Burgess v. FDIC, No. 17-60579 (5th Cir. Aug. 25, 2017). In 2016, an ALJ conducted a seven-day hearing in the matter. Cmplt. ¶ 65. In January 2017, the ALJ issued a Recommended Decision adverse to Burgess. *Id.* ¶ 66. Following post-hearing submissions, in August 2017, the FDIC Board entered an order of prohibition and imposed a civil money penalty ("CMP") of $200,000. *Id.* ¶¶ 66, 67. Several weeks later, Burgess appealed the Board's decision to the Fifth Circuit. *Id.* ¶ 68. Burgess argued that FDIC ALJ's were "inferior officers" but did not raise any other constitutional challenges to the Board's decision. *See* Brief of Petitioner at 22-27, *Burgess v. FDIC*, No. 17-60579 (5th Cir. Jan. 12, 2018). In October 2018, the Fifth Circuit remanded the case to the FDIC Board for further proceedings in light of an intervening Supreme Court decision.

In November 2019, the FDIC reassigned the enforcement matter to a different ALJ. *Id.* ¶ 75. In January 2022, after several agreed-upon postponements due to the pandemic (including a six-month postponement at the request of counsel for Burgess), the ALJ conducted a three-day supplemental hearing featuring eleven witnesses and 55 exhibits. *Id.* ¶ 76.[6] On September 16, 2022, the ALJ issued a 125-page decision recommending that Burgess be removed from his positions at Herring Bank and its holding company, that he be prohibited from working at other banks, and that he be required to pay a CMP of $200,000. *Id.* ¶ 5.[7] The Recommended Decision

---

[6] Burgess stipulated to accept the record and testimony of the original hearing. The second hearing was solely on the issue of bias, at Burgess' request. Burgess did not request a jury trial at any point in time during the proceedings.

[7] Recommended Decision, In the Matter of Cornelius Campbell Burgess, Docket Nos. FDIC-14-0307e; FDIC-14-0308k (Sept. 16, 2022), https://www.ofia.gov/decisions/2022-09-16-fdic-14-0307e.pdf.

found that Burgess breached his fiduciary duties and engaged in unsafe and unsound practices relating to his use of Bank-owned credit and debit cards to charge personal expenses, his claimed ownership of bank-owned stock that served as collateral on loans, and the depositing of stock dividend payments into his personal accounts.  The Recommended Decision found that Burgess did not violate Regulation O.

On October 17, 2022, Burgess filed his exceptions to the Recommended Decision.  In his exceptions, Burgess raises the same constitutional claims that he seeks to litigate in this lawsuit; specifically, that the FDIC is unconstitutionally structured, that the ALJ is unconstitutionally shielded from removal, and that Burgess unconstitutionally was denied a jury trial in the enforcement proceeding.  The Board must issue its final decision within 90 days after the case is submitted to it.  Cmplt. ¶ 78.

## APPLICABLE LEGAL STANDARDS

### A.      Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) requires the court to decide whether it has subject matter jurisdiction over the claims in the complaint.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).  The plaintiff bears the burden of proof to establish that subject matter jurisdiction does in fact exist.  *See id.*  If a Rule 12(b)(1) motion cannot be decided on the face of the complaint, district courts are empowered "to make factual findings which are decisive of [subject matter] jurisdiction."  *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).  The Fifth Circuit has explained that motions to dismiss based on a lack of subject matter jurisdiction should be resolved before any motion on the merits because subject matter jurisdiction is required to determine the validity of any claim.  *See Ramming*, 281 F.3d at 161; *accord Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

- 7 -

**B.     Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether the complaint pleads a viable cause of action.  To withstand dismissal, the complaint must include "[f]actual allegations . . . [adequate] to raise a right to relief above the speculative level," with "enough heft" to set forth "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 559 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  Furthermore, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief.  *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## ARGUMENT

Defendants demonstrate in Part I below that the Complaint should be dismissed pursuant to Rule 12(b)(1) because Section 1818(i)(1) divests this Court of jurisdiction to enjoin or otherwise intercede in FDIC enforcement actions.  In Part II, defendants show that subject matter jurisdiction is lacking for the independent reason that plaintiff's claims are barred by the statute of limitations. In Part III, defendants establish that Burgess' claims should be dismissed on ripeness grounds.  In Part IV and V, defendants demonstrate that even if this Court had subject matter jurisdiction over this case, plaintiff's removability theories lack merit and should be dismissed under Rule 12(b)(6). In Part VI, defendants show that plaintiff's Seventh Amendment theory is foreclosed by settled

precedent and is otherwise untenable.  Finally, in Part VII, defendant Whang demonstrates that all claims against her should be dismissed.

## I.   SECTION 1818(i)(1) DIVESTS THIS COURT OF SUBJECT MATTER JURISDICTION TO ENTERTAIN PLAINTIFF'S LAWSUIT.

### A.   The Divestiture of Jurisdiction is Explicit

The Financial Institutions Supervisory Act of 1966 ("FISA"), Pub. L. No. 89-695, 80 Stat. 1028, 12 U.S.C. § 1818, established a "tripartite regime of judicial review" for FDIC enforcement actions.  *See Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 38 (1991) (discussing 12 U.S.C. § 1818).  Under this tripartite framework, federal courts have subject matter jurisdiction to review FDIC enforcement actions in only three circumstances.  First, the statute permits the FDIC and other federal banking agencies to petition district courts for "the enforcement of any effective and outstanding notice or order issued [to an insured bank]" pursuant to Section 8 proceedings.  12 U.S.C. § 1818(i)(1).  Second, district courts have jurisdiction to review challenges by bank directors and institution-affiliated parties to an agency's issuance of an emergency temporary cease and desist order.  *See id*. § 1818(c)(2).  Third, the United States courts of appeals are vested with exclusive jurisdiction to review final agency orders issued in Section 8 proceedings.  *See id*. § 1818(h)(2).

Outside these specifically delineated circumstances, federal courts lack subject matter jurisdiction to review FDIC enforcement proceedings.  This is not merely implicit from the structure of Section 1818.  Rather, in language that the Supreme Court described as "plain" and "preclusive," Section 1818(i)(1) directs that:

> [E]xcept as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of ***any*** notice or order under any

> such section, or to review, modify, suspend, terminate, or set aside any
> such notice or order.[8]

12 U.S.C. § 1818(i)(1) (emphasis added).  In *MCorp Financial*, a bank holding company petitioned

a district court for an injunction barring the Board of Governors of the Federal Reserve System

from continuing to pursue an administrative enforcement action against the company.  *See* 502

U.S. at 36.  Citing Section 1818(i)(1), the Supreme Court explained that "the statute provides us

with clear and convincing evidence that Congress intended to deny the District Court jurisdiction

to review and enjoin the [Federal Reserve] Board's ongoing administrative proceedings."  *MCorp*

*Fin.*, 502 U.S. at 44.

The Fifth Circuit, in line with *MCorp Financial*, repeatedly has, on at least six occasions,

recognized that "§ 1818(i) on its face is sufficient to deprive the district court of jurisdiction to

review, modify or terminate banking agency disciplinary actions."  *Rhoades v. Casey*, 196 F.3d

592, 597 (5th Cir. 1999) (noting "the Supreme Court [has] held that the plain, preclusive language

of § 1818(i) 'provides us with clear and convincing evidence that Congress intended to deny the

District Court jurisdiction to review and enjoin' administrative proceedings" (quoting *MCorp Fin.*,

502 U.S. at 44)); *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 204 (5th Cir. 2021) (en

banc) (recognizing that the FDIC's statutory-review scheme includes "an explicit statutory bar on

any court enjoining 'the issuance or enforcement of any . . . [FDIC] order.'" (internal citation

omitted)), *cert. granted*, 142 S. Ct. 2707 (2022); *Bank of Louisiana v. FDIC*, 919 F.3d 916, 920

(5th Cir. 2019) (affirming district court's determination that § 1818(i) divested district court of

jurisdiction to enjoin FDIC enforcement proceeding); *Bd. of Governors of the Fed. Reserve Sys. v.*

---

[8]   Sections 1831o and 1831p-1 involve the powers of the appropriate federal banking agency to take prompt corrective action to resolve problems of insured depository institutions to protect the Deposit Insurance Fund and to proscribe operational and managerial standards that ensure the safety and soundness of insured depository institutions and have no relevance to this action.

*DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir. 1994) (affirming the district court's determination that § 1818(i) divested the court of jurisdiction to enjoin the FDIC and other banking agencies from continuing an enforcement proceeding); *Landmark Land Co. v. Office of Thrift Supervision*, 948 F.2d 910, 912 (5th Cir. 1991) ("On its face, and standing alone, this provision [*i.e.*, Section 1818(i)(1)] patently deprives the South Carolina court of any jurisdiction—as a transferee court or otherwise—over this matter."); *Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 894-95 (5th Cir. 1978) (applying Section 1818(i) and rejecting plaintiffs' attempt to circumvent the Office of the Comptroller of Currency enforcement proceedings by filing a lawsuit for declaratory and injunctive relief).

Burgess stated in his preliminary injunction motion that the Court should begin its analysis "with the question of whether the statute **explicitly** strips district-court jurisdiction."  Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. ("Pl. Mot.") at 24, Dkt. 15-1 (emphasis in original). "If it does," he acknowledges, "that is the end of the inquiry . . . ."  *Id.*; *accord BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous").  That concession sounds the death knell for Burgess' lawsuit, and for his motion for a preliminary injunction, because Section 1818(i)(1) explicitly and unambiguously divests district courts of jurisdiction to "affect by injunction or otherwise the issuance or enforcement" of any enforcement notice or order.  12 U.S.C. § 1818(i)(1).

The Court need not defer to the FDIC's understanding of the statute.  Instead, the Court can look to *Cochran*, where the en banc Fifth Circuit repeatedly describes Section 1818(i)(1) as an ***explicit*** statutory bar "on ***any*** court enjoining 'the issuance or enforcement of ***any*** . . . [FDIC] order.'"  20 F.4th at 204 (emphasis added) (first quoting *Bank of Louisiana v. FDIC*, 919 F.3d 916, 920 (5th Cir. 2019); then quoting § 1818(i)(1)); *see id.* at 204 ("[W]e held [in *Bank of Louisiana*]

that district court jurisdiction was ***explicitly*** divested."); *id.* (describing § 1818(i)(1) as an "explicit jurisdictional bar"); *id.* ("[W]e clarify that *Bank of Louisiana* was addressing the ***explicit*** statute at issue there—not all statutes that may be questioned—and it does not mandate the outcome here.") (emphasis added); *see also Bank of Louisiana*, 919 F.3d at 924 ("[A]s the FDIC correctly argues, the plain text of section 1818(i)(1) makes this case easier than the sister-circuit cases, which interpreted an SEC enforcement scheme lacking a similarly explicit jurisdictional bar.").

Faced with this adverse precedent, Burgess argued in his motion for a preliminary injunction that Section 1818(i)(1) neither explicitly nor implicitly withdraws jurisdiction over "**structural** constitutional claims that are **exogenous** to the Enforcement Proceeding."  Pl. Mot. at 25, Dkt. 15.  The difficulty with Burgess' exogenous/endogenous taxonomy is that it disregards the plain meaning of the statute.

The Supreme Court has observed that, when interpreting a statute, "a court should always turn first to one, cardinal canon before all others[:] . . . [it] must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"  *Id.* at 254 (citations omitted).  The Supreme Court and the Fifth Circuit have described Section 1818(i)(1)'s jurisdictional bar as "clear," "direct[]," "plain," "robust," and "explicit."  *MCorp Fin.*, 502 U.S. at 44 (describing the statute as "clear[]" and "direct[]"); *Rhoades*, 196 F.3d at 597 (discussing the "plain, preclusive language of § 1818(i)"); *Cochran*, 20 F.4th at 204 (characterizing § 1818(i) as an "explicit jurisdictional bar"); *Bank of Louisiana*, 919 F.3d at 920 ("[W]e have emphasized that '[section] 1818(i) in particular'— the jurisdictional bar referenced above—'evinces a clear intention that this regulatory process is

not to be disturbed by untimely judicial intervention[.]'") (quoting *DLG Fin. Corp.*, 29 F.3d at 999); *Bank of Louisiana*, 919 F.3d at 924 (describing § 1818(i) as "robust").[9]

In *MCorp Financial*, the Supreme Court held that, in contrast to the National Labor Relations Act—which lacks an explicit withdrawal of jurisdiction—"in FISA Congress has spoken clearly and directly: '*[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section.*'"  *MCorp Fin.*, 502 U.S. at 44 (alterations in original) (quoting § 1818(i)(1)); *accord Crane v. Beers*, No. 3:12-cv-3247-O, 2013 WL 12123944, at *3 n.3 (N.D. Tex. Dec. 9, 2013) (O'Connor, J.) (noting the distinction between the FISA and NLRA statutes), *aff'd sub nom. Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015).  The relief that Burgess seeks in his Complaint, "[a] stay or injunction barring continuation of the Enforcement Proceeding," Cmplt. p.40, is ***precisely*** the judicial intervention that Section 1818(i)(1) prohibits.  Although Section 1818(i)(1) does not specifically mention that the jurisdictional bar encompasses structural constitutional claims (exogenous or otherwise), nor does it specifically call out statutory claims, equitable claims, common law claims, or any other

---

[9]     Burgess argues in a footnote that "nothing in the legislative history of FISA suggests any intent to strip district-court jurisdiction over structural constitutional claims."  Pl. Mot. at 28 n.11.  His reliance on legislative history is misplaced, however, because courts "do not resort to legislative history to cloud a statutory text that is clear."  *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *accord Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012) ("[R]eliance on legislative history is unnecessary in light of the statute's unambiguous language." (citation omitted)).  In any event, the Senate Report cited by plaintiff confirms that Congress intended to confer jurisdiction on district courts solely to consider stays of *temporary* cease-and-desist orders, not stays of an enforcement action in its entirety.  S. Rep. No. 89-1482, at 11 (1966) (noting that an application for a stay of a temporary order "would, of course, be ancillary to the administrative proceedings, and the jurisdiction of the court would not extend to full consideration of the merits of the Board's charges but only to the court's determination of whether the *temporary cease-and-desist order* should be stayed or enforced *during the pendency of the administrative proceedings*.") (emphasis added), at 2 ("*Temporary orders* … could be stayed by a district court on application filed within 10 days.  Permanent orders, issued after a hearing on the record, could be appealed to the local U.S. court of appeals or the District of Columbia Court of Appeals.") (emphasis added).  Review in the courts of appeals is the "exclusive" remedy.  *Id.* at 15.

sort of claim or defense.  It does not need to.  The statutory phrase "**no** court" could not be narrower, and the phrase "**any** notice or order under this section" could not be broader.  As the Supreme Court explained while interpreting another federal statute, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (citation omitted).  Thus, taken together, "the expansive word 'any' and the absence of restrictive language [leave] 'no basis in the text for limiting' the phrase" in the way Burgess suggests.  *Id.* (citation omitted).

In practical terms, in order for this Court to assert jurisdiction over this proceeding, it would need to amend the statute to read:

> [E]xcept as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order, **except that district courts shall have jurisdiction over cases raising exogenous constitutional claims**.

Rather than altering the statutory text in this way, the Court should apply it according to its plain meaning and in accordance with an unbroken line of authority that spans the Fifth Circuit and every other circuit court and district court that has been asked to enjoin a banking agency enforcement proceeding.  As the Supreme Court has emphasized, courts are "not at liberty to engraft onto [a] statute an exception Congress chose not to create."  *Honig v. Doe*, 484 U.S. 305, 325 (1988); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("The short answer is that the Act contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text.") (citation omitted).

Congress enacted Section 1818(i) in 1966 and, since then, the Supreme Court, the Fifth Circuit, and many other federal courts have had occasion to apply it.  If the statute somehow could be read to permit district court jurisdiction over enforcement proceedings that implicate exogenous

constitutional claims, surely Burgess would have been able to cite at least one case in the annals of banking agency enforcement actions adopting his interpretation.  There are none.  Furthermore, if Burgess' approach were correct, *Bank of Louisiana* would have come out the other way.  The plaintiff in that case, like Burgess, argued that the ALJ presiding over an FDIC enforcement hearing had been unconstitutionally appointed.  *Compare Bank of Louisiana*, 919 F.3d at 921, with Cmplt. ¶ 114.  While acknowledging that federal courts generally have jurisdiction over cases arising under the Constitution, the Fifth Circuit observed that "Congress may 'channel[ ] judicial review of a constitutional claim' through 'a statutory scheme of administrative review followed by judicial review in a federal appellate court[,] [thereby] preclud[ing] district court jurisdiction.'" *Bank of Louisiana*, 919 F.3d at 922 (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012)). Because Congress did exactly that when it enacted Section 1818(i)(1), the Fifth Circuit affirmed the district court's conclusion that it lacked subject matter jurisdiction to consider the constitutional claim.  *See Bank of Louisiana*, 919 F.3d at 930.

### B.    The *Thunder Basin* Factors Confirm That This Court Lacks Jurisdiction

Courts turn to the *Thunder Basin* factors to determine whether a statute should be construed as implicitly withdrawing jurisdiction.  *See Cochran*, 20 F.4th at 204-05.  *Thunder Basin* has no application here because, as the *Cochran* court clarified, Section 1818(i)(1)—in contrast to the SEC statute—contains an ***explicit*** withdrawal of federal jurisdiction.  20 F.4th at 204.

The *Thunder Basin* factors, moreover, only "reinforce" the conclusion that Section 1818(i)(1) divests district courts of jurisdiction to consider collateral attacks on ongoing FDIC enforcement actions.  *See id.* (quoting *Bank of Louisiana*, 919 F.3d at 925).  As to the first factor, Burgess is already embroiled in an FDIC enforcement proceeding, indeed his participation in the enforcement proceeding has concluded: he filed his objections with the FDIC Board and is now awaiting its decision.  On the one hand, if the Board's decision is favorable to him, he has no need

for judicial review of it.  On the other hand, if the Board's decision is adverse, Burgess can obtain meaningful review from a court of appeals, which has exclusive and plenary authority to resolve all of his constitutional claims.  *See* 12 U.S.C. § 1818(h)(2); 5 U.S.C. § 706(2)(B); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) (recognizing that Congress had provided an avenue for meaningful consideration of constitutional claims by authorizing review of the Commission's orders in the courts of appeals).  In *Bank of Louisiana*, the Fifth Circuit concluded that the "meaningful review" factor was satisfied because the plaintiff was "already embroiled in an [FDIC] enforcement proceeding" and therefore did not "need . . . [to] take any additional risks" to assert its constitutional claims.  919 F.3d at 926-27 (internal citation and emphasis omitted).  As in *Bank of Louisiana*, Burgess does not have to "bet the farm" because, in the words of the Fifth Circuit, "the farm [is] already on the table."  *Id.*[10]  The fact of meaningful judicial review is particularly pronounced here because plaintiff has actually sought and obtained meaningful judicial review in the Fifth Circuit in this very proceeding.

As to the second *Thunder Basin* factor, Burgess argues that his exogenous constitutional claims are "wholly collateral" to the FDIC enforcement proceeding because he is pursuing challenges to the structure of the FDIC that are not tied to any substantive claim in the enforcement proceeding.  *See* Pl. Mot. at 31.  But Burgess' claims are not "wholly collateral"; he in fact raised them in his exceptions to the ALJ's Recommended Decision, and the stated purpose of this lawsuit is to enjoin the enforcement proceeding.  *See Bank of Louisiana*, 919 F.3d at 928 (concluding that constitutional claims were intertwined with the enforcement proceeding); *but see Cochran*, 20

---

[10]   In *Thunder Basin*, the Court decided jurisdiction was lacking based on the opportunity for meaningful judicial review in the court of appeals without regard to the other factors.  *See* 510 U.S. at 215; *see also Bebo v. SEC*, 799 F.3d 765, 774 (7th Cir. 2015) ("We think the most critical thread in the case law is the first *Free Enterprise Fund* factor: whether the plaintiff will be able to receive meaningful judicial review without access to the district courts.").

F.4th at 207 (concluding that because the plaintiff was "challenging the [Securities] Exchange Act's statutory-review scheme itself," the "'wholly collateral' factor weighs against preclusion").

The Seventh Amendment claim in particular is not wholly collateral to the enforcement proceeding. As plaintiff readily acknowledges, the Seventh Amendment claim does not challenge the statutory-review scheme itself, rather it challenges a particular component of the review scheme—namely whether breach of fiduciary duty claims seeking CMPs require a jury trial. Cmplt. ¶ 138. This claim is intertwined with the enforcement proceeding because the proceeding involves claims and remedies separate and apart from breach of fiduciary duty claims and remedies separate and apart from CMPs. The FDIC's Notice of Charges also alleged unsafe and unsound practices and violation of a federal regulation, namely Regulation O, and sought an Order of Removal and Prohibition from Further Participation. *See* Exhs. H (Notice of Charges) & I (Answer) in Support of Petitioner's Emergency Motion for Stay, *Burgess v. FDIC*, No. 17-60579 (5th Cir. Aug. 25, 2017). This Court would have to examine the interplay between the various claims and remedies in the enforcement proceeding and the particulars of the enforcement proceeding, including the Notice of Charges, the Answer, pre-hearing filings, the hearings and the post-hearing submissions, to determine if Burgess waived or ever asserted his now claimed right to a jury trial. *See Farias v. Bexar Cty. Bd. of Trustees*, 925 F.2d 866, 873 (5th Cir. 1991) (recognizing that "mere inadvertence on the part of the moving party" is not sufficient to allow an untimely jury demand). Moreover, Burgess has injected specific events in the enforcement proceeding into this case by characterizing specific arguments and documents offered into evidence in the course of the enforcement proceeding. *See* Pl. Surreply at 5-6, n.5, Dkt. 39-1. Thus, the claim depends on substantive aspects of the FDIC statute, along with FDIC rules and regulations, and cannot be characterized as wholly collateral to the enforcement proceeding.

In *Jarkesy*, the Fifth Circuit analyzed the Seventh Amendment argument on a petition for review of an adverse order from the SEC.  The Court was not faced with the question whether a district court had jurisdiction to interfere with an ongoing enforcement proceeding.   However, the D.C. Circuit confronted that very issue because Jarkesy (unlike Burgess) demanded a jury trial at the outset of the SEC proceeding and unsuccessfully sought an injunction in the United States District Court for the District of Columbia.  *See Jarkesy v. SEC*, 48 F. Supp. 3d 32 (D.D.C. 2014).  On appeal, the D.C. Circuit affirmed and held Jarkesy was not entitled to pre-enforcement review because he could obtain meaningful judicial review at the conclusion of the proceedings (as he did in the Fifth Circuit), and his claims were not "wholly collateral."  *Jarkesy v. SEC*, 803 F.3d 9, 22-27 (D.C. Cir. 2015).  Accordingly, *Jarkesy* weighs heavily against district court jurisdiction here.

As to the third *Thunder Basin* factor, Burgess argues that his structural constitutional claims "present questions of constitutional law as to which the FDIC has no special expertise."  Pl. Mot. at 31.  As this Court recognized in its ruling on the preliminary injunction, the Fifth Circuit rejected a similar argument in *Bank of Louisiana* where, citing cases from other circuits, it recognized that there are "various ways an agency [like the FDIC] might deploy its expertise on constitutional questions," including by resolving related statutory claims that might result in a favorable decision for the litigant, or by mooting the case through a finding in favor of the litigant, or by adopting a legal interpretation that sheds light on a constitutional question.  *See* 919 F.3d at 929.  Based on these considerations, the *Bank of Louisiana* court concluded that this factor also reinforced the conclusion that Section 1818(i) divested the court of jurisdiction to intercede in an FDIC enforcement action.  *See id.* at 929-30.

In sum, Section 1818(i)(1) by its own terms explicitly divests this Court of subject matter jurisdiction to enjoin or otherwise affect the ongoing FDIC enforcement action against Burgess. Application of the *Thunder Basin* factors only reinforce that conclusion.

## II.   PLAINTIFF'S CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1).

Plaintiff's claims, all of which rest on asserted constitutional violations, are also subject to dismissal under Rule 12(b)(1) because they are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401(a).[11]  Section 2401(a) mandates that "[e]xcept as provided for by chapter 71 of title 41 [the Contracts Disputes Act of 1978], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2401(a).

It is well settled that Section 2401(a)'s six-year limitations period applies to civil actions brought against federal agencies, including the FDIC.  *See, e.g.*, *Auction Co. of Am. v. FDIC*, 132 F.3d 746, 750 (D.C. Cir. 1997), *clarified on denial of rehearing*, 141 F.3d 1198, 1199 (D.C. Cir. 1998) (per curiam) ("[T]he FDIC count[s] as 'the United States' for the purposes of the catch-all federal statute of limitations for any 'civil action commenced against the United States,' 28 U.S.C. § 2401(a).");  *accord Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 578 (4th

---

[11]   In the Fifth Circuit, "[t]his timing requirement is jurisdictional, because it is a condition of the United States' waiver of sovereign immunity." *Gen. Land Office v. U.S. Dep't of Interior*, 947 F.3d 309, 318 (5th Cir. 2020); *accord United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). Even if the Section 2401(a) time limit were not jurisdictional, as some circuits have held, dismissal under Rule 12(b)(6) would be warranted because the defense is apparent from the face of the complaint. *See Higdon v. Hensley*, 49 F.3d 728 (5th Cir. 1995) (No. 94-20066), 1995 WL 103357, at *3 ("A Rule 12(b)(6) motion to dismiss is appropriate for raising a statute of limitations defense when the facts comprising the defense appear on the face of the complaint." (citing *Cross v. Lucius*, 713 F.2d 153, 155 (5th Cir. 1983))); *accord Smith v. JPMorgan Chase Bank, Nat'l Ass'n*, 825 F. Supp. 2d 859 (S.D. Tex. 2011), *adhered to on reconsideration*, No. C-11-260, 2012 WL 43627 (S.D. Tex. Jan. 9, 2012) (recognizing that a statute of limitations defense may be resolved through a Rule 12(b)(6) motion if the application of the defense is apparent on the face of the pleadings).

Cir. 2017) (recognizing that a claim is subject to Section 2401(a)'s statute of limitations "if it is 'against the United States' as that term is construed in the Little Tucker Act. 'United States' under the Little Tucker Act includes federal agencies and instrumentalities acting pursuant to statutory authority to accomplish a governmental objective.").

Moreover, the Supreme Court has recognized that "a constitutional claim can become time-barred just as any other claim can." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 292 (1983)); *accord Hair v. United States*, 350 F.3d 1253, 1259-60 (Fed. Cir. 2003) (citing *Block* and dismissing constitutional claims on limitations grounds). Consistent with *Clintwood Elkhorn*, courts have not hesitated to dismiss constitutional claims as untimely under Section 2401(a). *See Worthington v. Office of Nat'l Drug Control Policy*, No. 19-0081, 2020 WL 1509167, at *6 (D.D.C. Mar. 30, 2020), *aff'd per curiam*, No. 20-5113, 2020 WL 9311952 (D.C. Cir. Nov. 12, 2020), *cert. denied*, 141 S. Ct. 2738 (2021); *accord Horvath v. Dodaro*, 160 F. Supp. 3d 32, 43 (D.D.C. 2015) (noting that "section 2401(a) is applicable absent a more specific applicable statute of limitations" (citation omitted)); *Neighbors of Casino San Pablo v. Salazar*, 442 F. App'x 579, 580 (D.C. Cir. 2011) (per curiam) (applying section 2401(a) to constitutional claims).

A cause of action "first accrues" for statute of limitations purposes when the plaintiff can first "file suit and obtain relief"; in other words, when the plaintiff first has a "complete and present cause of action." *Doe v. United States*, 853 F.3d 792, 801 (5th Cir. 2017, revised Apr. 12, 2017) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (additional citations omitted); *see also Herr v. U.S. Forest Serv.*, 803 F.3d 809, 818 (6th Cir. 2015) ("The limitations period in § 2401(a) begins to run when a party's 'right of action first accrues'—'as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court.'"). In *Doe v. United States*,

- 20 -

for example, the plaintiff alleged that the government violated the Fifth Amendment by accusing him of various crimes without actually indicting him, thereby depriving him of an opportunity to defend himself against the accusations. *See* 853 F.3d at 801. The Fifth Circuit held that plaintiff's Fifth Amendment claim "accrued when the Government purportedly accused him of criminal activity without indicting him." *Id.* at 802.

In this matter, each of Burgess' constitutional claims accrued—at the very latest—when the FDIC commenced the enforcement action against him. By plaintiff's own account, the filing of the enforcement proceeding caused him to suffer a "here-and-now" injury. Cmplt. ¶ 83; *see id.* (alleging that "being forced to endure" the agency proceedings was a constitutional harm). Thus, under plaintiff's own theory, all of his claims accrued, at the latest, when the FDIC commenced the enforcement action against him on November 21, 2014. Cmplt. ¶ 60.[12] Because Burgess waited more than six years to assert his constitutional claims, they are now time-barred and subject to dismissal.

Nothing prevented Burgess from raising his constitutional claims within the limitations period. Count I asserts that the FDIC is unconstitutionally structured because the Constitution, "since the Founding," vests only the President with executive power with which to faithfully execute the Laws, not principal executive officers who otherwise are not accountable to the President. Cmplt. ¶¶ 90-101. Count II is anchored in related provisions of the Constitution. *See, e.g., id.* ¶ 111 (noting the Fifth Circuit's determination that ALJs were "officers" under the Appointments Clause, citing *Burgess v. FDIC*, 871 F.3d 297, 303 (5th Cir. 2017)). Count III

---

[12] Burgess alleges in his Complaint that the FDIC conducted an "unrelenting investigation" into his conduct from 2010-2014, Cmplt. ¶¶ 57-60, and that this investigation "imposed significant burdens" on him, *id.* ¶ 60. Thus, there is at least a fair argument that Burgess' claims accrued well before 2014.

invokes the Seventh Amendment. *See* Cmplt. ¶¶ 119-140; *see id.* ¶ 135 (arguing that "remedies for breaches for fiduciary duties . . . have been known at common law for centuries," and that such matters implicate the right to a jury under the Seventh Amendment). Assuming, *arguendo*, that Section 1818(i) does not explicitly divest this Court of jurisdiction to entertain Burgess' constitutional claims, the Court would have been free to consider them years ago had Burgess filed his lawsuit within the statute of limitations.

Burgess cannot resuscitate his stale claims by pointing to recent decisions resolving constitutional claims brought by other litigants. In other words, there is no equitable tolling doctrine that can be invoked by litigants who choose not to sue within the limitations period based on an "assessment that the odds of success in court were minimal." *Horvath*, 160 F. Supp. 3d at 44-45 (rejecting tolling argument). Burgess previously has argued that he could not have asserted his Seventh Amendment claim until the Fifth Circuit ruled that the Securities and Exchange Commission must offer a jury trial when it brings an enforcement action seeking CMPs. Pl. Prelim. Inj. Reply at 13, Dkt. 25 (discussing *Jarkesy*). That is simply incorrect. Bankers facing enforcement actions brought by federal bank regulators have been invoking the Seventh Amendment for at least the past 30 years. *See*, *e.g.*, *Akin v. Office of Thrift Supervision*, 950 F.2d 1180 (5th Cir. 1992); *Paul v. Office of Thrift Supervision*, 763 F. Supp. 568, 573-74 (S.D. Fla. 1990), *aff'd sub nom. without opinion Paul v. Ryan*, 948 F.2d 1297 (11th Cir. 1991). Nothing prevented Burgess from raising his constitutional claims in a timely fashion, and Section 2401(a) prevents him from doing so now.

## III.    IF PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED THEY ARE NOT  RIPE.

Burgess asserts three causes of action under the Declaratory Judgment Act, 28 U.S.C. § 2201. He contends that these claims are ripe because he suffered a "here and now" injury by being subjected to the enforcement proceeding. Cmplt. ¶¶ 83-89. If that is correct, the claims are time-

barred, because, as explained *supra*, Burgess waited eight years to file suit and the six-year statute of limitations on Section 2401(a) claims begins to run when a claim is ripe.[13]

If this nevertheless Court concludes that the statute of limitations has not run, it should dismiss on ripeness grounds. "When considering a declaratory judgment action, a district court must first determine whether the action is justiciable, which frequently boils down to a question of ripeness." *TOTAL Gas & Power N. Am. v. Fed. Energy Regulatory Comm'n* ("FERC"), 859 F.3d 325, 332 (5th Cir. 2017, revised July 10, 2017). "[A] declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). If the action is not ripe, the court must dismiss it. *See id.* at 895.

Here, assuming, counterfactually, that the statute of limitations did not begin to run when the agency initiated the enforcement proceeding, it would not start to run unless and until the agency reached a final decision and issued an order. In other words, if the case was not ripe in 2014, it will not be ripe until a final decision issues. There is no basis to determine that any interim event in the enforcement proceeding started the statute of limitations and Burgess has not argued otherwise.

---

[13]   The Supreme Court has held that a statute of limitations cannot commence one day, while the right to sue ripened on a later day, unless the statute at issue indicates otherwise. *TRW Inc. v. Andrews*, 534 U.S. 19, 34 n.6 (2001) ("[W]e here set the record straight. The question presented in *Bay Area Laundry* was whether a statute of limitations could commence to run on one day while the right to sue ripened on a later day. We answered that question, and only that question, 'no,' unless the statute indicates otherwise."); *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 200-01 (1997) ("Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief."); *Reiter v. Cooper*, 507 U.S. 258, 267 (1993) ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute."). The Declaratory Judgment contains no statement or indication that the right to sue differs from the commencement of the statute of limitations.

In *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134 (5th Cir. 2009), the Fifth Circuit held that a challenge to an administrative agency's authority to impose CMPs was not ripe unless and until "[FERC] determines that the [Act] has been violated and assesses a penalty." 567 F.3d at 146. The Court dismissed the declaratory judgment action in *Energy Transfer Partners* because the plaintiff's claims were not ripe. *See id.* at 146. Eight years later, in *TOTAL Gas & Power North America v. FERC*, the Fifth Circuit reiterated and reaffirmed the holding in *Energy Transfers*:

> We do not discern, and Total does not offer, any principled way to limit *Energy Transfer Partners*' reasoning to petitions for review under Section 19(b). To the contrary, the language of *Energy Transfer Partners* extends to any such challenge, regardless of the form in which it is brought. And, as discussed above, it is undisputed that FERC has not determined whether Total violated the NGA, nor has it imposed a penalty. Thus, under the holding of *Energy Transfer Partners*, Total's request for a declaratory judgment is not ripe.

859 F.3d at 337; *see id.* at 339 ("[I]n *Energy Transfer Partners*, we held that any challenge to FERC's authority to adjudicate NGA violations and impose a civil penalty must await a final determination of a violation and imposition of a penalty by FERC. [*Energy Transfer Partners*, 567 F.3d] at 146. Total's suit is thus not ripe and the district court did not err in dismissing it on justiciability grounds."). The FDIC has not determined whether Burgess has violated the FDI Act nor has it imposed a penalty. Thus, the case is not ripe under *Energy Transfer Partners* and *TOTAL Gas.*

In *Cochran*, the Fifth Circuit purported to distinguish *TOTAL Gas* and *Energy Transfer Partners* on the grounds that the litigants were seeking review of particular FERC "orders," whereas Cochran was seeking an injunction barring the SEC from continuing an administrative proceeding before an ALJ that had not yet occurred and Cochran's single claim challenging the

ALJ's removal power was "a pure issue of law."  *Cochran*, 20 F.4th at 212-13.[14]  This case

involves a claimed right to a jury trial under the Seventh Amendment, a far more factually

intertwined issue involving waiver considerations, judicial inquiries as to the specific claims and

remedies sought and consideration of whether Congress "solely" assigned such claims to

administrative tribunals.  *See* FDIC Reply at 10-12, Dkt. 38; *Jarkesy*, 34 F.4th at 456.  The ripeness

situation presented in this case bears a stronger resemblance to *Energy Transfer Partners* and

*TOTAL Gas* than *Cochran.*

## IV.    ALL OF PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE FORECLOSED BY THE MANDATE RULE.

In August 2017, the FDIC Board entered an order of prohibition and imposed a CMP of

$200,000 against Burgess.  Cmplt. ¶¶ 66, 67.  Burgess appealed the adverse order to the Fifth

Circuit but chose not to raise any of the three constitutional claims asserted in this lawsuit.  *See id.*

¶ 68; *see also* Brief of Petitioner, Statement of Issues, *Burgess v. FDIC*, No. 17-60579 (5th Cir.

Jan. 12, 2018).  The Fifth Circuit remanded to the FDIC without vacatur.  *See* FDIC's Unopposed

Motion for Remand to the Agency, at 3-5, *Burgess v. FDIC*, No. 17-60579 (5th Cir. Aug. 8, 2018),

Order Granting Unopposed Motion to Remand, *Burgess v. FDIC*, No. 17-60579 (5th Cir. Aug 20,

2018).

Under the mandate rule, issues that were omitted from an appeal or were not raised in the

proceeding from which the appeal was taken are forfeited or waived and cannot be litigated on

remand.  *See United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) ("[T]he [mandate] rule bars

litigation of issues decided by the district court but foregone on appeal or otherwise waived, for

example because they were not raised in the district court."); *United States v. Griffith*, 522 F.3d

---

[14]   The statute of limitations issue did not surface in *Cochran* because the SEC brought the
enforcement proceeding in April 2016 and *Cochran* filed suit in the district court in January 2019.
*Cochran v. SEC*, No. 4:19-cv-066-A, 2019 WL 1359252, at *1 (N.D. Tex. Mar. 25, 2019).

607, 610 (5th Cir. 2008) (same); 18B Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. Juris. § 4478.3 (3d ed. 2008) ("Law of the Case – Mandate Rule"). The mandate rule applies with full force when a matter is remanded to an administrative agency. *See* 18B Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. Juris. § 4478.3 (3d ed. 2008) ("An administrative agency is bound by the mandate of a reviewing court much as a lower court is bound by the mandate of a higher court."); *Chapa v. Astrue*, No. CA C-12-009, 2012 WL 4797117, at *12 (S.D. Tex. Oct. 8, 2012) ("Both [the law of the case doctrine and the mandate rule] have been applied to judicial review of administrative decisions.") (citing *Brown v. Astrue,* 597 F. Supp. 2d 691, 695 (N.D. Tex. 2009), *Grigsby v. Barnhart,* 294 F.3d 1215, 1218 (10th Cir. 2002), *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir. 1998)).[15]

Plaintiff's three constitutional arguments could have been asserted during the administrative proceedings that culminated in the Board's original decision in this matter, or during the Fifth Circuit appeal from that decision. First, the Fifth Circuit indisputably possesses jurisdiction to rule on constitutional arguments following final agency action. *See* 12 U.S.C. § 1818(h) (circuit courts have exclusive authority to review FDIC final agency actions in enforcement proceedings under the APA), 5 U.S.C. § 706(2)(B) ("The review court shall … hold unlawful and set aside agency action … contrary to constitutional right, power, privilege, or immunity."). Second, the FDIC's organic statute—the source of the purported constitutional violation alleged in Count I—has been in existence since 1933. *See* 12 U.S.C. § 1812; Banking Act of 1933, Pub. L. 73–66, 48 Stat. 162 (June 16, 1933). Third, the statutory provisions providing for-cause protection for ALJs and members of the Merit Systems Protection Board ("MSPB")—

---

[15] *See also Scott v. Mason Coal Co.*, 289 F.3d 263, 267-268 (4th Cir. 2002) ("The mandate rule applies with equal authority and weight to the Board and to the ALJ as administrative agencies.").

the source of the purported violation alleged in Count II—have been in existence since 1978.  *See* 5 U.S.C. §§ 1202(d), 7521(a); Pub. L. 95-454, title II, §§ 202(a), 204(a), 92 Stat. 1122, 1137 (Oct. 13, 1978).   Fourth, the Seventh Amendment—the basis for Count III—was adopted at the Founding and, if Burgess has a right to a jury trial in FDIC enforcement actions, he always has had that right.  *See Rivers v. Roadway Express*, 511 U.S. 298, 313 & n.12 (1994) (recognizing that, when a court construes a statute, it is explaining its understanding of what the provision has meant continuously since the date when it became law).

Indeed, Burgess presented the Fifth Circuit with an Appointments Clause challenge, but chose not to raise his removability and Seventh Amendment arguments despite the fact that he had every incentive to do so.  After all, presenting these arguments during the first appeal would have, at a minimum, obviated the need for further litigation and, if he prevailed on his Seventh Amendment argument, ended the administrative proceeding.  *See Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (the mandate rule "serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals") (citations and internal quotation marks omitted).   Burgess' failure to assert his constitutional arguments before the Fifth Circuit results in forfeiture and waiver under the mandate rule and, as a result, his claims should be dismissed with prejudice.  *See Yakus v. United States*, 321 U.S. 414, 444 (1944) (internal quotations omitted) ("No procedural principle is more familiar ... than that a constitutional right may be forfeited when a party fails to make timely assertion of the right before a tribunal having jurisdiction to determine it."); *Freytag v. Comm'r*, 501 U.S., 868, 895 (Scalia, J., concurring in part and in the judgment) ("[A]llowing parties to raise issues for the first time on remand does nothing to discourage sandbagging."); *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834-36 (5th Cir. 2011) (applying mandate rule to FDA; "The instant case is no

different; it, too, fits squarely within the waiver doctrine.  The FDA failed to raise its objection to the district court's original inspection declaration in the first appeal."); *Escamilla v. Elliott*, No. 21-50931, 2022 WL 2387354, at *2 (5th Cir. July 1, 2022) ("As to the district court's rejection of some evidence about Elliott's alleged racism, those arguments could have been but were not presented in her first appeal to this court.  Thus, that issue is forfeited.").[16]

Finally, the FDIC's research has not revealed a single instance in which a district court has been invited to interfere in an agency proceeding on direct remand from a circuit court, much less an instance where the court accepted such an invitation.  A leading treatise on the mandate rule does, however, explain how a district court should respond in such a situation:  "Of course the district court should not become involved when the agency action is reviewed directly by the court of appeals in the first instance."  18B Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. Juris. § 4478.3 (3d ed. 2008).

---

[16]  Plaintiff also waived these arguments by not raising them before the FDIC Board in the original enforcement proceeding.  The FDIC's regulations require that objections to a recommended decision be included in exceptions filed with the Executive Secretary on penalty of waiver.  *See* 12 C.F.R. § 308.39(b); *accord United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[O]bjections to the proceedings of an administrative agency [must] be made while it has opportunity for correction in order to raise issues reviewable by the courts."); *Freytag v. Comm'r*, 501 U.S., 868, 895 (Scalia, J., concurring in part and in the judgment) ("Arguments made in initial administrative proceedings should not be treated as a rough draft, to be expanded whenever a new idea pops into a party's head.  Instead, the "very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance."); *Edd Potter Coal Co., Inc. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 39 F.4th 202, 210 (4th Cir. 2022) ("On remand, parties may not raise whatever new issues they would like if they have previously failed to bring those issues to the attention of the ALJ and the Board.  The mere fact of a remand does not wipe the whole slate clean."); *Zumwalt v. National Steel and Shipbuilding Co.*, 796 F. App'x 930, 931-32 (9th Cir. 2019) (applying similar Department of Labor regulation and holding issue was forfeited on appeal because it was not raised in petition for review by the agency's board).

## V.   PLAINTIFF'S REMOVABILITY CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE, AS THE COURT ALREADY RECOGNIZED, THE CLAIMS LACK MERIT.

In Counts I and II of his Complaint, Burgess alleges that two organizational aspects of the FDIC prevent the President from performing his duty under Article II of the Constitution to "take Care that the Laws be faithfully executed."  Cmplt. ¶¶ 91-118.  Count I alleges that the FDI Act establishes a five-member FDIC Board, of which three members unlawfully are removable only for cause.  Count II alleges that the ALJs appointed by the FDIC unlawfully have more than one level of for-cause removal protection.  But Burgess cannot prevail on his challenges to for-cause removal restrictions unless he establishes that those restrictions inflicted harm on him.  Because Counts I and II fail to allege any such harm, they do not state a plausible claim for relief and should be dismissed.

### A.   Count I Fails To State A Claim.

Under the FDI Act, the FDIC Board comprises five members:  three members appointed by the President and confirmed by the Senate (appointed members), the Comptroller of the Currency, and the Director of the Consumer Financial Protection Bureau ("CFPB").  12 U.S.C. § 1812(a)(1).  Not more than three Board members may be members of the same political party.  *Id*. § 1812(a)(2).  The appointed members serve six-year terms, and the President designates one of the appointed members, upon Senate confirmation, to serve as Chairperson of the Board for a five-year term.  *Id*. § 1812(b)(1), (c)(1).  After their terms expire, the appointed members and Chairperson may continue to serve until a successor has been appointed and qualified.  *Id*. § 1812(c)(3).  There is no dispute that two Board members—the Comptroller and the CFPB

Director—are removable at will by the President.[17]   The FDI Act does not expressly address Presidential removal of appointed Board members, but it has been assumed that the President may remove them during their term only for cause.

Assuming for the sake of argument that on a fully-staffed five-member FDIC Board, a three-member majority would be unconstitutionally protected from removal, Count I fails to state a claim because Burgess fails to allege that he was harmed by any for-cause removal restrictions. In *Collins*, the Court, relying on *Seila Law*, struck as unconstitutional the for-cause restriction on removal of the Director of the Federal Housing Finance Agency ("FHFA").  But the Court rejected the plaintiffs' argument that this constitutional defect entitled them to relief, because that argument conflated Appointments Clause violations with improper removal restrictions:

> All the officers who headed the FHFA during the time in question were properly *appointed*.  Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.

*Collins*, 141 S. Ct. at 1787 (emphasis in original).  Accordingly, Burgess cannot obtain relief unless he establishes that an unconstitutional removal restriction inflicted harm on him.  *Id*. at 1788-89. The Court provided two examples where a removal restriction would cause harm—if the President had attempted to remove a Director but was prevented from doing so by a lower court ruling that

---

[17]   *See Collins v. Yellen*, 141 S. Ct. 1761, 1785 n.19 (2021) ("the Comptroller was removable at will by the President, who needed only to communicate the reasons for his decision to Congress"); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2210-11 (2020) ("*Seila Law*") (severing CFPB Director's for-cause removal protection from the Dodd-Frank Act).

he lacked "cause," and if the President had publicly expressed displeasure with a Director's actions and stated that he would remove the Director if the statute did not stand in the way. *Id*. at 1789.[18]

Both the Fifth Circuit and other courts of appeals have applied *Collins* to reject challenges to for-cause removal restrictions that did not inflict harm on the challengers. *See Cmty. Fin. Servs. Ass'n v. CFPB*, 51 F.4th 616, 633 (5th Cir. 2022) ("*CFSA*") ("Regardless, the record before us plainly fails to demonstrate any nexus between the President's purported desire to remove [CFPB Director] Cordray and the promulgation of the Payday Lending Rule or, specifically, the Payment Provisions.  In short, nothing the Plaintiffs proffer indicates that, but for the removal restriction, President Trump would have removed Cordray *and* that the Bureau would have acted differently as to the rule.") (emphasis in original), *petition for cert. filed*, (U.S. Nov. 14, 2022) (No. 22-448); *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170 (10th Cir. 2022) ("Petitioners in our case don't point to any such 'compensable harm' resulting from the Bureau's unconstitutional structure. We therefore find no avenue of relief available to them under *Collins*."); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742-43 (9th Cir. 2022) (declining to void a CFPB enforcement action where nothing suggested that "the challenged action was taken by a Director whom the President wished to remove but could not because of the statute"); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022) ("*Collins* does not say that *any* administrative penalty imposed by an unconstitutionally-structured agency must be vacated.  Instead, the constitutional violation must have *caused* the harm.") (emphasis in original).

---

[18]   The Court remanded the case for further proceedings because "the [*Collins* plaintiffs] nevertheless claim that the unconstitutional removal provision inflicted harm." *Collins*, 141 S. Ct. at 1789.  The case recently was dismissed with prejudice because "[a]s Plaintiffs have failed to plead that they were harmed by the removal restrictions, they are unable to make a claim for relief." *Collins v. Lew*, No. 4:16-CV-03113, 2022 WL 17170955, at *5 (S.D. Tex. Nov. 22, 2022), *appeal docketed*, No. 22-20632 (5th Cir. Dec. 8, 2022).

Burgess does not allege that any unconstitutional restrictions on removal of Board members inflicted harm on him as mandated by *Collins*. Instead, he alleges that "[t]his case differs materially from *Collins* because here Burgess is requesting <u>prospective</u> relief. . . . Burgess is not seeking through this lawsuit to retrospectively 'unwind' anything that the FDIC has already done[.]" Cmplt. ¶ 104 (emphasis in original). But since the Complaint was filed, the Fifth Circuit has confirmed that Burgess's prospective/retrospective distinction makes no difference:

> While the Plaintiffs acknowledge *Collins*, they argue the case is distinguishable on several grounds. None are persuasive.
>
> First, they assert that *Collins* applies only to retrospective relief. But *Collins* did not rest on a distinction between prospective and retrospective relief. As the Sixth Circuit recently explained, *Collins*'s remedial inquiry "focuse[d] on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief."

*CFSA*, 51 F.4th at 631 (quoting *Calcutt*, 37 F.4th at 316). And Burgess's allegation (Cmplt. ¶ 105) that the *en banc* Fifth Circuit held otherwise in *Cochran* is without merit. The constitutionality of removal restrictions was not at issue in *Cochran*, much less the available remedies in the event that restrictions are found unconstitutional. Instead, "[t]he question presented [was] whether a provision of the Securities Exchange Act of 1934 . . . implicitly strips federal district courts of subject-matter jurisdiction to hear structural constitutional claims." *Cochran*, 20 F.4th at 197-98; *id.* at 199 ("The sole issue on appeal is whether the district court had subject-matter jurisdiction over Cochran's claims."); *id*. at 211 ("this case presents only the issue of whether the Exchange Act divested district court jurisdiction over claims that SEC ALJs are unconstitutionally insulated from the President's removal power; our holding extends no further"). Undeterred, Burgess points to a footnote in the *Cochran* majority opinion responding to the dissent's reference to the distinction recognized by *Collins* between Appointments Clause challenges and removal-

restriction challenges.  Cmplt. ¶ 105 (citing *Cochran*, 20 F.4th at 210 n.16.).  Absent from the majority-dissent exchange is a discussion of whether *Collins* permits challengers to obtain prospective relief without showing compensable harm, much less a suggestion that there is a holding on that issue embedded in the majority's footnote.  Burgess also cites language from the *Cochran* concurrence.  *See* Cmplt. ¶ 105 (citing *Cochran*, 20 F.4th at 233 (Oldham, J., concurring)).  But a concurrence is not binding precedent.

Even if *Collins* and *CFSA* had not been issued and Burgess were able to obtain relief from an unconstitutional removal restriction without showing harm, his claim would still fail because *Seila Law* did not address the constitutionality of a multimember board like the FDIC Board; instead, it concerned the CFPB, an agency headed by a single individual who was removable only for cause.  The Court noted that it had recognized two exceptions to the President's unrestricted removal power:  in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), for certain agencies headed by multimember boards, and in the cases of *United States v. Perkins*, 116 U.S. 483 (1886), and *Morrison v. Olson*, 487 U.S. 654 (1988), for certain inferior officers.  *See Seila Law*, 140 S. Ct. at 2198-200.  The Court then framed the question before it, and the answer, as "whether to extend those precedents to the 'new situation' before us, namely an independent agency *led by a single Director* and vested with significant executive power.  We decline to do so.  Such an agency has no basis in history and no place in our constitutional structure."  *Id*. at 2201 (emphasis added) (citation omitted).  Moreover, although the Court described the *Humphrey's Executor* exception as "one for multimember expert agencies that do not wield substantial executive power," *Seila Law*, 140 S. Ct. at 2199-200, in discussing how to remedy the CFPB's constitutional defect, the Court also stated that Congress could "pursu[e] alternative responses to the problem—for example, converting the CFPB into a multimember agency."  *Id*. at 2211.  The

Court further noted that "[t]he dissent categorizes the CFPB as one of many 'financial regulators' that have historically enjoyed some insulation from the President,"[19] but distinguished those agencies from the CFPB instead of addressing any for-cause removal protection they may have had. *Id*. at 2202 n.8; *see also Collins*, 141 S. Ct. at 1787 n.21 (noting an argument that invalidating the for-cause removal restriction for an agency led by a single director would call into question various agencies including '"multi-member agencies for which the chair is nominated by the President and confirmed by the Senate to a fixed term,'" and responding that "[n]one of these agencies is before us, and we do not comment on the constitutionality of any removal restriction that applies to their officers").

As recently as 2010, the Supreme Court resolved a constitutional challenge with the understanding that *Humphrey's Executor* applies to agencies headed by multimember boards. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 487 (2010) ("The parties agree that the [SEC] Commissioners cannot themselves be removed by the President except under the *Humphrey's Executor* [*v. United States*] standard of 'inefficiency, neglect of duty, or malfeasance in office,' . . . and we decide the case with that understanding."). And although *Seila Law* declined to extend *Humphrey's Executor* to single-headed agencies, the Supreme Court has not applied *Seila Law* to strike down a multimember board's for-cause removal protection, and "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

---

[19] *See Seila Law*, 140 S. Ct. at 2233 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part) (mentioning, *inter alia*, the FDIC).

### B.      Count II Fails To State A Claim.

ALJs appointed by the FDIC may be removed from employment only for cause as determined by the Merit Systems Protection Board ("MSPB"), 5 U.S.C. § 7521(a), and MSPB members, in turn, may be removed by the President only for cause.  *Id*. § 1202(d).  Accordingly, FDIC ALJs have at least two layers of for-cause removal protection.  In *Jarkesy v. Securities & Exchange Commission*, 34 F.4th 446, 465 (5th Cir. 2022), the Fifth Circuit held that SEC ALJs were unconstitutionally protected by two layers of for-cause removal protection.  Although the FDIC respectfully disagrees with *Jarkesy*, it recognizes that *Jarkesy* is currently binding precedent for this Court.  But Count II of the Complaint still fails as a matter of law for the same reason that Count I does, because Burgess has not alleged that the restrictions on removal of FDIC ALJs inflicted harm on him, which is dispositive under *Collins* and *CFSA*.  *See Jarkesy*, 34 F.4th at 465-66 (holding that the Seventh Amendment and non-delegation violations justified vacatur but as to the double-layer for-cause removal restriction, "we do not address whether vacating would be appropriate based on that defect alone").

### VI.     PLAINTIFF'S SEVENTH AMENDMENT CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE IT IS FORECLOSED BY CONTROLLING PRECEDENT AND OTHERWISE WITHOUT MERIT.

Defendants demonstrated in their post-hearing brief and motion for reconsideration, and in their reply brief in support thereof, that Burgess' Seventh Amendment claim suffers from several fatal flaws.  First, every court that has considered the question, including the Fifth Circuit, has recognized that there is no right to a jury trial in administrative enforcement proceedings brought by federal bank regulators.  *See* Defs.' Post-Hearing Br. in Opp'n to Pl.'s Prelim. Inj. ("Post-Hearing Br.") at 8-9, Dkt. 33; Defs.' Reply Br. in Supp. of Mot. for Recons.("Reply Br.") at 3-6, Dkt. 38.  Second, Burgess' demand for a jury trial is foreclosed by the public-rights exception announced by the Supreme Court.  *See* Post-Hearing Br. at 4-10; Reply Br. at 10-12.  Third,

Congress did not authorize the FDIC to bring enforcement proceedings in federal court and, as result, an injunction requiring the agency to do so dismantles the statutory scheme with respect to claims that are classified as purportedly jury-eligible.  Fourth, Burgess has waived any right to a jury trial by not raising it during two administrative hearings or a Fifth Circuit appeal, and waiting eight years from the inception of the enforcement proceeding to assert such a right.  Rather than restating these points at length, defendants respectfully incorporate their prior briefing.  *See* Dkts. 33, 38.

## VII.   ALL CLAIMS AGAINST DEFENDANT WHANG, THE ADMINISTRATIVE LAW JUDGE, SHOULD BE DISMISSED BECAUSE SHE HAS NO ONGOING ROLE IN THE ADMINISTRATIVE ENFORCEMENT PROCEEDING.

Administrative Law Judge Whang should be dismissed from this action for two reasons. First, as set forth above, plaintiff cannot prevail on Count II, his claim that FDIC ALJs are unconstitutionally protected from removal by the President.  That is the only Count that relates to ALJ Whang in her official capacity.  Second, ALJ Whang's involvement in the enforcement proceeding ended before plaintiff filed this lawsuit.  As the Complaint notes, ALJ Whang issued her recommended decision on September 16, 2022.  Cmplt. ¶ 77.  In the event this Court's preliminary injunction is vacated by the Fifth Circuit, ALJ Whang will not have any role in the ongoing enforcement proceeding or the FDIC Board of Directors' issuance of a final decision in the Burgess action.  Plaintiff seeks a permanent injunction terminating the enforcement case and prohibiting the issuance of a final decision.  *See* Cmplt. p.40.  Given that ALJ Whang already has issued her recommended decision, there is no future action that the Court might properly enjoin her from taking.  Because she is not a necessary party at this juncture, assuming she ever was, she should be dismissed from this case.  *See generally Orff v. United States*, 545 U.S. 596, 602-03 (2005) (recognizing that Federal Rule of Civil Procedure 19(a) requires plaintiffs to join parties in whose absence the district court would be unable to afford complete relief) (citing BLACK'S LAW

DICTIONARY 928 (5th ed. 1979), for the definition of "necessary parties"); *Davis v. Mass. Mut. Life Ins. Co.*, 69 F.2d 16, 16 (5th Cir. 1934) (affirming dismissal of defendants against whom no claims were asserted); *McBride v. Foti*, 59 F.3d 1243 (5th Cir. 1995) (No. 94-30567), 1995 WL 413048 (per curiam) (unpublished) (same); *Shockley v. Univ. of Texas Med. Branch*, No. 3:06-CV-0223-K, 2008 WL 2223072, at *1 (N.D. Tex. May 15, 2008) (dismissing defendants against whom plaintiff asserted no claims for relief).

## CONCLUSION

For the foregoing reasons, the FDIC respectfully requests that plaintiff's complaint be dismissed in its entirety, without leave to amend, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew J. Dober
Senior Counsel

 /s/ *Andrew A. Nicely*

Bryce C. Quine (Tex. No. 24032976)
Arthur E. Anthony (Tex. No. 24001661)
600 North Pearl Street, Suite 700
Dallas, Texas  75201
Telephone:  (972) 761-8520
Alternate Tel.: (972) 761-2237
Email: bquine@fdic.gov
Email: aranthony@fdic.gov

Andrew A. Nicely (Va. No. 41750)
Daniel Kurtenbach
3501 Fairfax Drive, D-7028
Arlington, VA 22226-3500
Tel.:  (703) 516-5729
Fax:  (703) 562-2477
Email: anicely@fdic.gov

*Counsel for Defendants*

DATED:   January 3, 2023

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record registered to receive such notices.


          /s/ *Andrew A. Nicely*
            Andrew A. Nicely